NELL G. LANGDON ET AL., APPELLEES, V. LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT.

8 N. W. (2d) 201

FILED FEBRUARY 22, 1943. No. 31477.

*William P. Kelley* and *August Wagner*, for appellant.

*Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action of Loup River Public Power District, appellant, to condemn and acquire by eminent domain an easement for an electric power transmission line across 50 acres of land in Douglas county, Nebraska, the property of Nell G. Langdon and J. Frederick Langdon, appellees. The appellees have been designated by the parties as plaintiffs and the appellant as defendant, and for convenience in discussion these designations will be adhered to herein.

In 1939 the defendant entered upon the lands of plaintiffs and constructed its transmission line, which action was held by this court an illegal entry. Thereafter in July, 1941, the defendant instituted condemnation proceedings which were heard and which resulted in an award in favor of plaintiffs for $3,500 with interest at the rate of 6 per cent. per annum from May 1, 1939. The defendant appealed from the award and on a trial in the district court a verdict was returned by a jury in favor of the plaintiffs for $3,875 plus interest. Judgment was entered on the verdict. Motion for new trial was filed and overruled. From this judgment the defendant has appealed.

The only issue before the trial court was the damage sustained by plaintiffs as a result of the taking of land and construction of the transmission line.

The defendant urges that the verdict is excessive and that many errors were committed during the trial, which

consisted of erroneous admission and rejection of evidence, erroneous charge to the jury, failure to properly and sufficiently charge the jury, misconduct of the court, misconduct of counsel and misconduct of the jury.

We first direct our attention to the matter of instructions. It is claimed that instruction No. 1 given by the court is erroneous because it is too general. With it no proper fault may be found. It states the issue and the jury were informed that the measure of damage was the difference between the value of the land immediately before and immediately after construction. Defendant finds no fault with this measure.

Instruction No. 2 given by the court lacks clarity in statement, but we cannot say it is calculated to mislead. Fairly interpreted the instruction informed the jury that they had a right to consider the numerous factors which contributed to a reduction in the value of the land following the construction of the transmission line. In this there was no error.

The principal objection to instruction No. 3 is that it used the word "forced'" in stating the power by which the defendant was permitted to acquire this easement. Other terms might well have been employed, but we cannot see that prejudice has flowed from the use of this word.

No instruction was given by the court on preponderance of evidence, and none was requested by the defendant. Of this failure to instruct, the defendant complains. Preponderance of evidence however is defined.

Whether or not in an action of this kind where in the first instance there is properly speaking no plaintiff and no defendant and at least theoretically an independent board of appraisers is selected for the purpose of making an award, with permission of interested parties to offer evidence, but with no party required to assume the substantial affirmative, there should be a requirement of instruction on appeal as to preponderance of evidence, is a matter surrounded with considerable doubt, but assuming the propriety of such an instruction the failure to give it in this

case was not error of which defendant may complain. The rule as laid down by this court is that the trial court in a case dependent upon the preponderance of evidence should instruct the jury thereon, but a party who fails to call attention to a failure so to do and request an instruction thereon may not afterwards be allowed to subject the parties to costs and vexation of another trial. *Chalupa v. Tri-State Land Co.*, 92 Neb. 477, 138 N. W. 603; *Kilpatrick & Co. v. London Guarantee & Accident Co.*, 121 Neb. 354, 237 N. W. 162.

The defendant calls attention to and urges that the court erred in its refusal to give four instructions, numbered 1, 2, 3 and 4, tendered by it. No error is found in the refusal to give No. 2 since the subject-matter was sufficiently covered in the instructions given. Likewise no error is found in the refusal to give No. 3. It is negative and cautionary in character and nothing in the record justified its submission.

As to instructions Nos. 1 and 4 a much more serious problem is presented. The two instructions are of the same general character and if given would have correctly apprised the jury of the character and kind of evidence of fear they had a right to consider in determining the damage to which plaintiffs were entitled.

In the record there is evidence of fear of danger of the kind which may properly affect the value of land over which an electric transmission line extends and of the kind which may not.

The instructions given did not properly cover this subject, therefore we must conclude that the court erred in refusing to give one or both of these instructions or one of similar import.

The rule with reference to fear in such circumstances as these is as follows: "Mere general fears from the presence of a transmission line cannot be made the basis upon which to predicate any depreciation in market value, for ill-defined fear that at some unknown time in the future some misfortune may come to man or beast by reason of

the transmission line cannot enter into the consideration of those who are required to fix the amount of the damages." *Dunlap v. Loup River Public Power District,* 136 Neb. 11, 284 N. W. 742.

This rule was further elucidated in *Wahlgren v. Loup River Public Power District,* 139 Neb. 489, 297 N. W. 833, in the following language: "Fear as such cannot be made the basis upon which to predicate depreciation in market value of land. A fair statement seems to be that the only fear which may be considered as an element in fixing value is that of danger, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger."

This error requires a reversal of the judgment, but in order that further error may be avoided on a new trial of this case it is deemed advisable to discuss some of the remaining assignments.

Attention has been called to the fact that the jury became informed as to the award of the appraisers, and the claim is made that this was error, for the reason that such information was calculated to create bias, passion and prejudice in the minds of the jurors.

While the argument in this connection from the standpoint of reason has merit and is persuasive, yet such practice is upheld by the decisions of this court. In *Chicago, R. I. & P. R. Co. v. Buel,* 56 Neb. 205, 76 N. W. 571, it was stated:

"The first assignment argued in the brief is directed against the ninth or last instruction given by the court on its own motion, which was to the effect that if the jury ascertained that the value of the land taken for right of way purposes and the damages to the remainder of the tract, if any, determined in accordance with the previous instructions, together, exceeded the sum of $800,—the amount awarded by the commissioners,—interest was to be allowed at the rate of seven per cent. per annum on the entire sum

found by the jury to be due the plaintiff below. This instruction is in harmony with many adjudications of this court, and is opposed to none. It is well settled that where, on an appeal for an award of damages for lands taken for right of way, the damages are found to exceed the sum returned by the commissioners, the owner is entitled to interest from the date of the appropriation."

This pronouncement was followed in *Grimm v. Elkhorn Valley Drainage District*, 98 Neb. 260, 152 N. W. 374, and no decision has been found overriding it. The plaintiffs and the trial court cannot properly be criticized or condemned for following the specific pronouncements of this court.

It is, however, the considered opinion of this court that, on a new trial of this case and in future condemnation litigation, evidence of the award of appraisers shall not be admissible as evidence to go to a jury. The proper and approved practice shall be, for the purpose of preserving the right of the landowner to interest, for the court, after verdict, to compute and add the interest to the judgment in those cases where the verdict of the jury exceeds the award of the appraisers.

It also appears that certain jurors learned of the amount of the award during the progress of the trial by reading an article in the World-Herald, a metropolitan newspaper of Omaha, Nebraska.

It follows then, in the light of the right to offer evidence of the appraisers' award, assuming the impropriety of the reading of the amount of the appraisers' award in a newspaper by jurors before a verdict was returned, that this complaint may be dismissed without comment other than that no information was obtained in addition to what had already been properly received.

On rebuttal the plaintiffs were permittted to introduce evidence of statements with regard to warning of danger from electric transmission lines of one E. J. DeBoer. The defendant charges that this was error. It clearly was error. DeBoer was not a witness on the trial and no deposition of

his was used or sought to be used. No foundation was ever laid for the admission of any statement made by DeBoer for any purpose whatsoever.

The last assigned error which will be discussed here is that witnesses for the plaintiffs testifying with regard to damage were permitted to state the price at which other, similar and adjacent lands were sold.

On this question this court has made recent pronouncements. *Rushart v. Department of Roads and Irrigation, ante,* p. 301, 5 N. W. (2d) 884; *Swanson v. Board of Equalization, ante,* p. 506, 6 N. W. (2d) 777. In *Rushart v. Department of Roads and Irrigation, supra,* it was stated: "This court follows the rule that, where the value of real estate is in issue, evidence of particular sales of other land may not be introduced as independent proof of the question of value."

Without departing from the strict letter of this rule we think it requires qualifications. The rule as stated however does not and should not exclude testimony in chief as to the sale of other lands where proper and sufficient foundation has been laid to make such testimony of value. It seems that there could be no better evidence of the true market or going value of land than the price paid for other, similar and similarly situated land sold at about the same time when, by evidence, it is shown that the price so paid for the other lands depended upon market or going value rather than other considerations. To demonstrate nonadmissibility under the rule, let us say the other lands were purchased for a specific purpose such as a filling station or some other commercial enterprise not common to the particular location, and for that reason the purchaser was willing to pay much more than market or going value. It is easy to see that in such circumstances price, without foundation, should not be admitted. It would be grossly misleading.

Evidence of price of land sold should be held to be admissible in condemnation proceedings on the subject of damage which price is predicated upon a sufficient foun-

dation to furnish a criterion for market or going value of land condemned. We hold that it is, and any decisions of this court holding or tending to hold to the contrary are expressly overruled.

On this question there is a division of opinion in the various jurisdictions, but the reasoning supporting the position we now take appears more convincing than that supporting the opposite position. A statement contained in *St. Louis, K. & N. W. R. Co. v. Clark,* 121 Mo. 169, 25 S. W. 192, 26 L. R. A. 751, as follows, covers the subject clearly, comprehensively, exhaustively and convincingly: "We think the evidence of sales of similar property to that in question, made in the neighborhood, about the same time, was admissible to aid the jury in determining the damage to which the owner was entitled. The value of property is ascertained largely from such sales, and the opinions of witnesses as to values are largely predicated upon them. It is best, when it can be done, to put the jurors in possession of all the facts from which values are ascertained, and allow them to draw the conclusion therefrom. Witnesses basing their opinions upon recent sales, of like property, are liable to exaggerate or underestimate values; in any consideration they are no more capable of deducing fair conclusions from the known facts than the jury. The object is to ascertain the general market value, and if particular sales are made under exceptional circumstances the fact can be shown, and the jury can determine its probative force. Certainly no more reliable method of determining the fair market values of lands can be reached than that derived from *bona fide* sales of similar lands in the vicinity. The objection that such evidence raises collateral issues, as to the character of the land sold, and the circumstances of such sales, is more than compensated for by its value in aiding the jury to a correct conclusion."

In *Loloff v. Sterling,* 31 Colo. 102, 71 Pac. 1113, it was said: "There are two lines of decisions upon evidence of this character, one spoken of in the books as the Massachusetts doctrine, which is in favor of its admissibility;

the other as the New York doctrine, against it.  \*  \*  \*
Without entering into a discussion of the question, we
think the decided weight of authority, as well as reason, is
in favor of its admissibility.   There is force in the objec-
tion usually made thereto that it raises collateral issues,
and in certain cases may prolong a trial by causing an in-
vestigation of similar sales, yet the disadvantages arising
therefrom are more than compensated by the benefits which
are likely to come to jury from its reception."

Numerous other citations sustaining this view are col-
lected in the annotations in 118 A. L. R. 869 *et seq.*   The
opposing view is set forth in 118 A. L. R. 905 *et seq.*

This conclusion of course calls for a modification of the
rule with reference to cross-examination announced in
*Rushart v. Department of Roads and 'Irrigation, supra.*
What the proponent of a witness may go into in chief, the
cross-examiner may inquire into on cross-examination on
the liberal terms extended to the cross-examiner, but he
may not entirely disregard foundational matters, as was
true in *Rushart v. Department of Roads and Irrigation, su-
pra.*   To have announced in that case the rule here set forth
would not have changed the result.   In any event that case
would have required reversal on account of the prejudicial
error found in the form and substance of the questions
propounded on cross-examination as is disclosed in that
opinion independent of any inquiry regarding the charac-
ter of the subject-matter here discussed.

The verdict and judgment of the district court are re-
versed and the cause remanded for a new trial.

REVERSED.

Rose and Eberly, JJ., not participating.