NELL G. LANGDON ET AL., APPELLEES, V. LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT.

13 N. W. 2d 168

FILED FEBRUARY 25, 1944. No. 31673.

*August Wagner* and *William P. Kelley,* for appellant.

*Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This is an action by the Loup River Public Power District, appellant, to acquire by condemnation, through the power of eminent domain, an easement for an electric power transmission line across 50 acres of land in Douglas county, Nebraska, the property of Nell G. Langdon and J. Frederick Langdon, appellees. The appellees will be herein designated as plaintiffs and appellant as defendant.

In July, 1941, the defendant instituted this condemnation proceeding which was heard by five appraisers and resulted in an award for the plaintiffs in the amount of $3,500. From this award the defendant appealed to the district court and there a jury entered a verdict in favor of the plaintiffs in the amount of $3,875. From the judgment entered thereon appeal was taken to this court and the case reversed. It is reported in 142 Neb. 859, 8 N. W. 2d 201. Upon a retrial thereof in the district court the jury rendered a verdict of $2,500 in favor of the plaintiffs to which the court added interest from May 1, 1939, at 6 per cent and entered judgment in favor of plaintiffs in the amount of $3,093.73 with interest at 6 per cent from date thereof. From this judgment defendant has appealed.

The only issue is the damage the plaintiffs have sustained to their lands by reason of the construction of the transmission line.

As stated in *Northeastern Nebraska R. Co. v. Frazier,* 25 Neb. 42, 40 N. W. 604: "The question of the amount of damages sustained by a land owner for a right of way condemned across his land is peculiarly of a local nature, proper to be determined by a jury of the county, and the supreme court ordinarily will not vacate or modify the verdict, if it is based upon the testimony in the case." This

case has been submitted three times to determine the amount of damages; once to a board of five appraisers and twice to a jury in the district court, and the amount of damages to which the plaintiffs are entitled was determined in each instance. Under these circumstances, to justify this court in reversing the judgment entered thereon as being against the weight of evidence, it must be clearly wrong or there must have been such error in the giving or refusing of instructions or in the trial of the case as was palpably prejudicial to the rights of the parties complaining. See *Dunbar v. Briggs,* 18 Neb. 94, 24 N. W. 449.

The defendant contends that the damages allowed by the jury are excessive and not sustained by the evidence and cites many cases in support thereof. As damages the plaintiffs are entitled to recover full compensation for the land actually taken and for such damages to the remainder thereof as are equivalent to the diminution in the fair market value thereof. It has long been the rule in this state that, "Where the verdict of a jury is clearly against the weight and reasonableness of the evidence, it will be set aside and a new trial granted." *Bentley v. Hoagland,* 94 Neb. 442, 143 N. W. 465; *Stewart v. City of Lincoln,* 114 Neb. 362, 207 N. W. 511. However, "when the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong." *Grimm v. Elkhorn Valley Drainage District,* 98 Neb. 260, 152 N. W. 374. It is the province of the jury to harmonize the testimony in so far as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses. *Wahlgren v. Loup River Public Power District,* 139 Neb. 489, 297 N. W. 833. The witnesses of both the plaintiffs and the defendant testified as to the difference in the fair market value of the premises before and after the construction of the high-line. While the individual opinions of the witnesses widely differed on the question of the loss in value of the land, however, the witnesses were qualified to testify and their testimony was relevant to the question at issue. Therefore, the verdict being sustained by

the evidence, it is not so clearly wrong as would entitle the defendant to have it vacated and set aside.

The defendant further contends that the conduct of the trial judge in the presence of the jury in ruling on evidence, in making comments from the bench and his attitude in general, constituted prejudicial error. In jury trials the credibility of a witness and the weight of his testimony are matters for the jury and not for the court. As stated in 64 C. J. 90: "In accordance with the general rule that the judge presiding at a trial must conduct it in a fair and impartial manner, he should refrain from making any unnecessary comments or remarks during the course of a trial which may tend to a result prejudicial to a litigant or are calculated to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudice will result therefrom, is fatal to the validity of the trial; * * * ." And as stated in Abbott, Civil Jury Trials (5th ed.) 1082: "Each party is entitled to have the jury pass upon the evidence without having its effect or importance altered, either as to credibility or value, by the indulgence of the court in remarks to witnesses or comments upon them or their testimony, which may tend either to magnify or diminish it in the jury's estimation."

This court has stated: " * * * it is the duty of the court, as well as of the attorneys, to endeavor to surround the trial with an atmosphere of fairness, undisturbed by prejudice, passion or ill will." *Bourne v. State*, 116 Neb. 141, 216 N. W. 173. "In the trial of a cause before a jury, improper comments of the trial judge from the bench may be prejudicially erroneous where they tend to discredit a witness and his testimony." *McCulley v. Anderson*, 119 Neb. 105, 227 N. W. 321.

The record discloses that the defendant was offering testimony of its witness, Chris Larsen, as to the use of land for farming purposes after the construction of the same high-line for the purpose of rebutting testimony on that subject offered by the plaintiffs. The following transpired:

"Q. Did you haul bundles under a line twenty-five feet from the ground? A. Yes, sir. Q. Did you have any trouble when you did so? The court: We don't care what this witness did. That is what I am trying to wake Mr. Crofoot up to." No objection had been made and the court should have refrained from taking an active part in the trial. Particularly is this true when the evidence, as here, was admissible. The defendant further offered a photograph of the premises involved and the surrounding community. The court, in overruling objections thereto and in receiving it in evidence, made the following statement: "We will receive it with the understanding that photographs are deceiving as to distance and angles. A photograph may exaggerate a slope or decrease it. They are not dependable on the question of the slope, or as to distance. They are deceptive." In the examination of the witness Rohrbaugh by the defendant, the following transpired: "Q. All right, we will say 115,000 volts. If a 115,000 volt line goes by the property. The court: This witness hasn't qualified as a real estate sales expert. Mr. Wagner: Well, I will qualify him. The court: I don't think you can." In the examination of its witness O. E. Edison, he testified that lightning was an abnormal condition and subsequent to the following question: "Then if a man drove under this line, more than four inches from the line, on a load of bundles, is there any danger to him when there is no lightning on the line?" Upon objection being made and sustained, the court stated: "You threw in there that there was no lightning condition. Mr. Wagner: Yes. The court: And I say this court will assume that that is a normal condition in this community. That is assumed." This went to the credibility and weight of the testimony of this witness who had testified lightning was an abnormal condition. Numerous other remarks of the court in ruling on objections and in reference to witnesses and their testimony is contained in the record together with an undue restriction of the defendant in his examination of the plaintiffs' witnesses and his own. It leaves a record that fails to show that defendant had a fair

and impartial trial. The statement as set forth in *In re Estate of Strelow*, 117 Neb. 168, 220 N. W. 251, is adaptable to this case: " * * * it is sufficient to say that under our practice the jury are the sole judges of the credibility of the witnesses, and the weight to be given their testimony. Hence, it is our conclusion that such remark made by the trial judge was without the province of the court, and was erroneous and prejudicial."

The defendant contends that the court erred in giving that part of instruction No. 4 as follows: " * * * and arrive at such an amount as in your judgment will fairly compensate the plaintiffs for the decrease in the market value of the land for its highest and best purposes, which, according to the testimony, appears to be the division into small tracts for suburban homes, and return your verdict in such amount." In this we think the defendant correct. " 'The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking.' *McGinley v. Platte Valley Public Power and Irrigation District*, 133 Neb. 420, 275 N. W. 593." *Schulz v. Central Nebraska Public Power and Irrigation District*, 138 Neb. 529, 293 N. W. 409. The court properly admitted evidence of the nature of the community and its development into acreage or small tracts for country or suburban homes and the adaptability of the land in question for that purpose. The market value of property includes its value for any reasonable use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which made up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating compensation. The proper inquiry is, what is its fair market value in view of any reasonable use to which it may be applied and all the reasonable uses to which it is adapted? The correct rule is as stated in *Alloway v.*

*Nashville,* 88 Tenn. 510, 13 S. W. 123: " ' * * * witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market?' Lewis, Eminent Domain, sec. 479."

Therefore, in its instruction to the jury, the court should not have told the jury to determine the value of the damage to the property because of its adaptability for any single purpose, but should have instructed it to determine the fair market value of the lands actually taken and the damages to the remainder thereof based on the decrease of its fair market value by reason of the taking of the easement and construction of the transmission line immediately before and after the taking and the construction thereof.

Defendant further complains of the court permitting the plaintiffs' witnesses to testify as to the sale of what is referred to as the Wilmarth acreage of about 1.4 to 1.5 acres and also the Mullen tract of .6 acre. Foundation was laid as to time, location, and nature of the premises sold. *Rushart v. Department of Roads and Irrigation,* 142 Neb. 301, 5 N. W. 2d 884, states the rule: " * * * where the value of real estate is in issue, evidence of particular sales of other land may not be introduced as independent proof of the question of value." However, *Langdon v. Loup River Public Power District, supra,* after quoting the above, states: "Without departing from the strict letter of this rule we think it requires qualifications. The rule as stated however does not and should not exclude testimony in chief as to the sale of other lands where proper and sufficient foundation has been laid to make such testimony of value." Under our ruling that the plaintiffs could show the adaptability of their lands

for acreage tracts for country or suburban homes, we find this testimony properly admitted under the above holding of this court.

The defendant further contends that the court erred in adding interest to the amount of the award. At the close of the evidence the defendant requested the court to instruct the jury not to add interest to the amount of their verdict, but this request was denied. In view of our holding herein it is not necessary to discuss the question of whether or not the verdict, under the instructions, included interest. However, there are two questions relating to interest that are necessary to be determined under the facts herein.

First, what is the proper procedure in condemnation cases with regard to the question of interest? In *Langdon v. Loup River Public Power District, supra,* we held: "It is, however, the considered opinion of this court that, on a new trial of this case and in future condemnation litigation, evidence of the award of appraisers shall not be admissible as evidence to go to a jury. The proper and approved practice shall be, for the purpose of preserving the right of the landowner to interest, for the court, after verdict, to compute and add the interest to the judgment in those cases where the verdict of the jury exceeds the award of the appraisers." In view of this holding, the proper procedure in a condemnation action, where an appeal is taken from the award and the case is tried to a jury in the district court, is for the court to reserve the question of interest for its determination and direct the jury not to include it in their verdict. See *St. Louis, El Reno & Western Ry. Co. v. Oliver,* 17 Okla. 589, 87 Pac. 423.

Second, whether the court erred in adding interest to the amount of the verdict, it being less than the appraisers' award. The facts disclose that no deposit was ever made either in the county or district court of the amount of the appraisers' award, although the record discloses the easement has been taken and the transmission line constructed since the date from which interest was allowed. Under the

provisions of section 74-307, Comp. St. 1929, under which this proceeding is being had, it provides: "If such corporation shall, at any time before it enters upon said real estate, for the purpose of constructing its road, pay to the county judge for the use of the owner the sum so assessed and returned to him as aforesaid, it shall thereby be authorized to construct and maintain its said road over and across such premises: * * * ." Under this statute we have announced the rule with reference to interest in case of appeal, beginning with *Sioux City R. Co. v. Brown*, 13 Neb. 317, 14 N. W. 407, to *Langdon v. Loup River Public Power District, supra*, as follows: "If on appeal from an award of damage for land condemned and occupied for railroad purposes the damage be found to exceed that returned by the commissioners, the owner may have interest thereon from the time he was entitled to compensation." However, in none of these cases is the question discussed with reference to a situation, such as here, where the condemnor has taken possession but no deposit made as by the statute required. Our Constitution, section 21, art. I, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." To like effect is section 74-301, Comp. St. 1929. That generally the taking includes interest is well settled. As stated in Orgel, on Valuation under Eminent Domain, 18, sec. 5, note 20: "This minimum includes the allowance of interest on the amount of the award from the date of the taking to the date of the award of compensation"—and the numerous authorities therein cited. As stated in *Central Nebraska Public Power and Irrigation District v. Fairchild*, 126 Fed. 2d 302: "When it makes its payment into court the amount of such payment constitutes a fund which must be deemed a substitute to the owners for the land of which they have been deprived and for their damage. See *State ex rel. Katelman v. Fink*, 84 Neb. 185, 120 N. W. 938; *Omaha Bridge & Terminal Ry. Co. v. Reed*, 69 Neb. 514, 96 N. W. 276." Under our Constitution and these statutes, any one taking the property of another under the power of eminent domain is generally re-

quired to pay interest upon the amount of compensation from the taking. When the condemnor, as here, fails to bring himself within the statute, under which we have held that on appeal from the award of the appraisers he is not liable for interest unless the amount of the award is increased, by depositing with the county judge the amount of the award for the use of the owner before going into possession and occupying the premises, he is not entitled to the benefit of the rule. He is subject to the general rule that the owner is entitled to interest on the amount of the compensation from the taking no matter whether the verdict of the jury is larger or smaller than the award of the appraisers and no requirement rests upon the owner to make demand for such deposit or to take any action requiring such deposit to be made to entitle him to interest thereon.

The defendant further contends that the court failed to properly tax the costs. The court ordered that each party pay his own costs. The mandate of this court on the previous consideration of this litigation ordered the costs of that appeal taxed to the plaintiffs. The statute, section 74-307, Comp. St. 1929, provides: "Such railroad company shall in all cases pay the costs of the first assessment: * * * ." And further that: " * * * if on appeal the appellant shall not obtain a more favorable judgment and award than was given by said freeholders, then such appellant shall be adjudged to pay all the costs made on such appeal; * * * ." Under this later provision of the statute in *Burlington & M. R. R. Co. v. Spere*, 24 Neb. 125, 38 N. W. 35, we held: "Under section 97, chapter 16 of the Compiled Statutes, as amended in 1883, where on appeal from an award of damages for property taken for right of way of a railway, and the verdict is less than the amount of the award, neither the railway company nor the land owner will be liable for all the costs of the appeal; but ordinarily such costs should be divided between the parties." The order of the lower court was proper in so far as the costs in its court were concerned. But the costs of appeal in this

court in the former hearing were taxed to the plaintiffs as evidenced by the mandate issued. The directions of this mandate must be followed. Likewise, the costs of this appeal are taxed to the plaintiffs.

The defendant further contends that there was error by the court in the refusing of the giving of certain instructions. The purpose for which instructions are given is stated in *Zabinski v. Novak*, 211 Wis. 215, 248 N. W. 99: "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired."

The court refused defendant's requested instruction No. 2 which is a definition of fair market value. We find no other definition thereof contained in the instructions given and we think it should have been included in the instructions. While we said in the previous opinion in this case that the failure to give this instruction was not error, we think, however, it should be included in the instructions in all condemnation cases.

The court refused to give defendant's requested instruction No. 3. With this we find no fault. This is merely a precautionary instruction and while it could have been properly given, it was not error to refuse it.

Defendant objects to the giving of instruction No. 3 which is the same as instruction No. 2 in the previous trial and there we held the giving of the instruction was not error.

Defendant objects to instruction No. 6 which refers to the testimony of certain witnesses who testified as experts, which includes this statement: " * * * and the conclusions of such persons are considered of great value * * * ." As stated in *Horst v. Lewis*, 71 Neb. 370, 103 N. W. 460: "Expert evidence is permitted where the facts under investigation are such that the witness is supposed, from his experience, skill and study, to have peculiar knowledge upon the

subject of inquiry, which jurors generally do not possess." However, " * * * The weight to be given to such expert testimony is ordinarily a question for the jury. * * * Jurors are not bound by the testimony of experts; their evidence is to be weighed as that of all other witnesses." *McNaught v. New York Life Ins. Co.*, 143 Neb. 220, 12 N. W. 2d 108. While the balance of the instruction properly qualified the consideration thereof, we do not think the instruction should state that such testimony is of great value.

The defendant complains of the fact that at its request, to which no objection was made by the plaintiffs, the court refused to let the jury view the premises and claims this is prejudicial error. We have often announced the rule as stated in *Reams v. Clopine*, 121 Neb. 86, 236 N. W. 158: "Whether the jury shall be permitted to view the *locus in quo* is a question addressed to the sound discretion of the court." And as stated in *Robison v. Troy Laundry*, 105 Neb. 267, 180 N. W. 43: "The granting or refusal of an order directing a view by the jury of the locality of the accident rests within the sound discretion of the trial court, and the fact that one party consents to the request of the other that such view be directed will not control the discretion of the court in that regard." Although it would seem desirable for the jury to view the premises under the facts of this case, however, the record fully discloses the nature of the premises, the surrounding community and all facts necessary for their determination of the issues and we find no abuse of discretion on the part of the trial court.

The defendant complains because the court failed to instruct as to special benefits. The rule as to special benefits is stated in *Prudential Ins. Co. v. Central Nebraska Public Power and Irrigation District*, 139 Neb. 114, 296 N. W. 752: " 'In order that benefits may be set off against the * * * damage to that injured in making an improvement * * * they must be special or local or such as result directly and peculiarly to the particular tract of which a part is taken.' 20 C. J. 822. See, also, 2 Farnam, Water and Water Rights, 1068; 4 Sutherland, Damages (4th ed.)

4106; 3 Sedgwick, Damages (9th ed.) 2299; *City of Omaha v. Schaller*, 26 Neb. 522, 42 N. W. 721." The record discloses no evidence of any special benefits and therefore no instruction thereon was required nor should it have been given.

The question of the qualification of witnesses to testify as to the value of the premises in question is raised by the rulings on objections to the testimony of certain witnesses. In *Republican V. R. Co. v. Arnold*, 13 Neb. 485, 14 N. W. 478, we stated: "Where persons are shown to be familiar with the value of a particular piece of land, across which a railroad has been built, they may be permitted to testify as to the value of such tract immediately before the location of the road, and to the value thereof immediately afterwards." And in *Wahlgren v. Loup River Public Power District, supra*, we stated: " * * * where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation. *Republican V. R. Co. v. Arnold*, 13 Neb. 485, 14 N. W. 478; *Blakeley v. Chicago, K. & N. R. Co.*, 25 Neb. 207, 40 N. W. 956; *Burlington & M. R. R. Co. v. White*, 28 Neb. 166, 44 N. W. 95; *Chicago, R. I. & P. Ry. Co. v. Buel*, 56 Neb. 205, 76 N. W. 571." And as stated in 20 Am. Jur. 754, sec. 897: "Ordinarily, property owners who have lived for some time in the vicinity and know the property are qualified to testify to its value." Either lay or expert witnesses may be used if proper foundation is laid showing they have an acquaintance with the property and are informed as to the state of the market, the weight and credibility being for the jury.

For the reasons herein given the judgment and verdict of the lower court are set aside and the case remanded to the lower court for a new trial in accordance herewith.

REVERSED.