JESSE B. KENNEDY ET AL., APPELLEES AND CROSS-APPELLANTS, V. DEPARTMENT OF ROADS AND IRRIGATION OF THE STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE.

35 N. W. 2d 781

Filed January 28, 1949. No. 32484.

*John E. Newton, Harold S. Salter, James H. Anderson,* Attorney General, and *Clarence S. Beck,* for appellant.

*George W. Leamer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was instituted by the Department of Roads and Irrigation of the State of Nebraska, appellant, to acquire by condemnation through the power of eminent domain for state highway purposes a part of the land in Dixon County owned by Jesse B. Kennedy and Ethel Kennedy, appellees.

Appraisers were appointed and an award made by the appraisers in the manner provided by law on the 7th day of April, 1947, for the appellees in the sum of $6,067.60. An appeal was taken to the district court and the trial there resulted in a verdict for appellees for $385 as the value of 3.434 acres actually taken and $5,000 as damages to the remainder of the land of the appellees. The judgment in favor of the appellees is $5,385 with interest at six percent per annum from the date of the judgment, and the costs in the district court

were taxed to them. This appeal is from that judgment.

Appellant does not complain of the verdict and judgment of $385 for the land taken, but does object to the $5,000 allowed appellees as damages to the remainder of their 383 acres of land.

The issue presented by the appellant is the damage the appellees have sustained to their land by reason of the location and construction of the highway in question, and the assignments of error of the cross-appeal are in reference to the time when interest on the amount recovered should commence and whether the district court was right in taxing the costs accrued in that court to the appellees.

The 383 acres of land owned by appellees laid in an "L" and was part of Section 21, Township 30 North, Range 6 East, of the 6th P. M., Dixon County, Nebraska, towit: The south half, the southeast quarter of the northeast quarter, and about 23 acres in the south part of the northeast quarter of the northeast quarter, the north line of which was on a diagonal running generally northwest to southeast, and also a parcel of land in Section 22 of about a city block, subdivided into lots of the city of Ponca, and lying immediately east of the farm. The land condemned was 3.434 acres of the north 63 acres, consisting of a long narrow strip 86.1 feet wide, extending from the east border of the land of appellees towards the northwest for a considerable distance and then curving gradually until where it leaves the land it is running due north. It commences on the east at about the upper two-thirds of the southeast quarter of the northeast quarter of Section 21 and leaves the farm in the northwest corner of the 23 acre tract which is a part of the northeast quarter of the northeast quarter of Section 21.

The land of the appellees was one unit and had been and was used as such since it was purchased and occupied by them in the spring of 1943. The land was used for raising grain and other feed crops, grazing, and as a stock raising and stock feeding farm. The appellees fed as

. many as 100 cattle and 200 hogs each year. There were many large and valuable improvements on the land, such as a nine-room modern residence, wash house, fuel house, summer house, sleeping house, large hay shed and stock shed combined, large barn, corncribs, granary, double garage, three feed yards, a sewer system for the residence with an outlet in a creek to the south of the buildings, a water system consisting of a reservoir, pipes, etc. which supplied running water in the residence, barn, hog house, and for the farmstead generally. The water was pumped with power supplied by electricity. The water system and possibly the sewer system were affected adversely to some extent by the construction of the highway. These buildings and improvements are in the northeast corner of the farm and the highway is located south of and near' them. The shortest distance between the highway and the nearest building is 29 feet, and in one location the highway passes through one of the feed yards, the center of the highway being about the center of the feed yard, and the only place to build a new feed yard to replace the one through which the highway passes is to the west of the only available windbreak. The line fences on the farm are woven wire (or "hog wire" as stated in the record), some of which are 26 inches with two barbed wires above, and some 32 inches with three barbed wires above, except on the north near the buildings where there is a high board fence. Some of the cross fences are woven wire with barbed wires above. One of the seven hydrants of the water system is in the borrow pit, from which dirt was excavated. The value of the buildings and improvements is not less than $15,000.

The highway separates the buildings and improvements from all the balance of the farm except there are about 10 or 11 acres to the north of it. There are 12 or .13 acres south of the highway and north of a creek on the land. It will be necessary for appellees to construct a fence and gates on each side of the highway. There is a box culvert 4 feet wide, 6 feet high, and about 30 feet

long under the highway, intended as a passageway for stock. The evidence shows a dispute as to whether this is sufficient or practical. There is no other way to cross the highway except through gates and on the surface of the highway. There is a borrow pit to the north adjacent to and parallel with the highway, nearly its full length on the land of appellees. It contains an area of 2.560 acres, and this has been excavated to a maximum depth of 14 feet and an average depth of 4½ feet, and much of the pit will be used for drainage purposes.

In Northeastern Neb. R. R. Co. v. Frazier, 25 Neb. 42, 40 N. W. 604, this court said: "The question of the amount of damages sustained by a land owner for a right of way condemned across his land is peculiarly of a local nature, proper to be determined by a jury of the county, and the supreme court ordinarily will not vacate or modify the verdict, if it is based upon the testimony in the case." There is a sharp conflict in the evidence as to the damage to the owners because of the location and construction of the highway through their land. The evidence of the witnesses for the appellees is that the land before the taking of a part thereof was of a fair and reasonable market value of $125 per acre, and after the taking of a part thereof was of a fair and reasonable market value of $100 per acre. The witnesses for the appellant testified that the fair and reasonable market value of the land before the taking of a part thereof for the highway was $91.30 per acre and $91 per acre respectively, and that the market value of the land was not decreased and the land was not damaged by the location and construction of the highway thereon, except one of its witnesses said the damage to the land was $1,000. It cannot be said that the testimony was not conflicting or that it was not pertinent to the issue, and it was for the jury to say what conclusion should be drawn therefrom. "* * * when the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong." Grimm v. Elkhorn Valley Drainage District, 98

Neb. 260, 152 N. W. 374. "The jury are the judges of the credibility of witnesses and of the weight of their testimony." Newman v. Department of Public Works, 124 Neb. 684, 248 N. W. 94. In Remmenga v. Selk, *ante* p. 401, 34 N. W. 2d 757, the court recently said: "In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." The witnesses gave testimony as to the difference in the fair market value of the land before and after the location and construction of the highway. They differed widely on the question of the loss in the value of the land, but they were qualified to testify and their testimony was relevant to the issue. In Wahlgren v. Loup River Public Power District, 139 Neb. 489, 297 N. W. 833, it was held: "In condemnation proceedings, where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation.

"The determination of the qualifications of witnesses to testify as to damages in condemnation proceedings is one resting in the sound discretion of the court."

There is nothing substantial shown in the record to discredit any witness. It cannot be found that the verdict is not supported by the evidence, that it is clearly wrong, or that it is not based upon the evidence in the case.

The submission of this case to the jury was more favorable to the appellant than the record justifies. The trial court instructed the jury to determine whether special benefits accrued to the remainder of the property of appellees as a result of the location of the highway through their land and if the jury found they did, then it was required to reduce the damages to the remainder of the land by the amount of the special benefits. There is no evidence in the record of any special benefits to the

land of appellees because of the location and construction of the highway. Prudential Ins. Co. v. Central Neb. Public Power and Irrigation District, 139 Neb. 114, 296 N. W. 752, 145 A. L. R. 1; Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168.

The judgment of the district court is for the amount of the verdict with interest at six percent per annum from the date of its rendition, the 10th day of February, 1948. The appellees by cross-appeal allege error in this respect and assert that interest on the amount of the judgment should have been allowed and ordered from the date of the commencement of the condemnation, the 7th day of April, 1947.

These proceedings were brought and prosecuted by the authority of section 39-603 and sections 23-325 to 23-332, R. S. 1943.

The award of the appraisers to the appellees was the sum of $6,067.60. The briefs of the appellant and of the appellees state that the appellant deposited the amount of the award with the county judge of Dixon County, as provided by the statute. The appellant and the appellees took separate appeals to the district court and the two transcripts filed were docketed as separate cases in that court. These were later by agreement consolidated and have since been treated as one case. The trial in the district court resulted in a verdict for the appellees for $5,385. This was $682.60 less than the award of the appraisers. The action of the trial court in awarding interest on the amount of the verdict only from the date of the rendition of the judgment was correct because the award of the appraisers was in excess of the amount of the recovery in the district court.

Langdon v. Loup River Public Power District, 142 Neb. 859, 8 N. W. 2d 201, states the rule as follows: "The proper and approved practice shall be, for the purpose of preserving the right of the landowner to interest, for the court, after verdict, to compute and add the interest to the judgment in those cases where the

verdict exceeds the award of the appraisers." See, also, Central Neb. Public Power and Irrigation District v. Fairchild, 126 F. 2d 302.

The rule in this state is that if on appeal from an award in condemnation proceedings the damage exceeds that found and awarded by the commissioners or the appraisers, the owner of the property condemned may have interest thereon from the time of the taking; but if the condemner deposits with the county judge the amount of the award for the use of the owner before going into possession and occupying the premises, and if by the appeal the amount of the award is not increased, the owner is not entitled to interest from the time of the taking but may recover interest on the judgment entered on appeal only from the date of the rendition thereof. Sioux City R. R. Co. v. Brown, 13 Neb. 317, 14 N. W. 407; Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168.

The assignment of error by the appellees in reference to the allowance of interest in this case cannot be sustained.

Appellees also complain that the court required them to pay all the costs which accrued in the district court. They rely upon the statements made in Burlington & Missouri River R. R. Co. v. Spere, 24 Neb. 125, 38 N. W. 35, and Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168, in reference to the taxation of costs. What was said in those cases in reference to the taxation of costs is not applicable to or authority in this case because it is controlled and limited by a statute not involved in either of those cases. Each of those cases was brought under the statute providing for the condemnation of property by railroad companies, which is now section 74-308 et seq., R. S. 1943. The statute originally contained the following provision: "* * * and in no case shall said corporation be liable for the costs on such appeal, unless the owner of such real estate shall be adjudged entitled, upon the appeal,

to a greater amount of damages than was awarded by said freeholders." R. S. 1866, c. 25, § 97, p. 224. This provision was amended before the case of Burlington & Missouri River R. R. Co. v. Spere, *supra*, and in reference thereto the court in that case said: "It was found that the practical application of this statute was liable to work great injustice to the land owner in the taxation of costs, because, while he might be willing and anxious to receive the award made by the commissioners, yet, if the railroad company appealed and the verdict was less than the amount of the award, the land owner would not only lose the interest on the money, but must pay the costs of the appeal. This in many cases was a great hardship. The new statute was passed in 1883, and took effect June 1st of that year. The provision is remedial in its nature, and was designed to relieve the hardships occasioned by the former statute, so far at least as not to make the land owner liable for all costs."

The appellant is authorized by section 39-603, R. S. 1943, to appropriate real estate for its use "* * * in the manner provided for appropriation and condemnation of real estate by counties for public use as prescribed by sections 23-325 to 23-332, * * *." Section 23-329 contains a provision in legal effect identical with that in the statute in reference to railroad condemnations before that statute was amended. It is as follows: "* * * and in no case shall the county board be liable for the costs on such appeal unless the owners of such real estate shall be adjudged entitled on appeal to a greater amount of damages than was awarded by the commission of freeholders."

Appellees did not increase their recovery on the appeal in the district court in this case and by the mandate of the quoted provision were chargeable with all costs of the case in that court and the court was correct in requiring them to pay all the costs which accrued in the district court. The statute required the appellant to pay the costs of the first assessment; the court properly

736

taxed the costs in the district court to the appellees; and the costs of this appeal should be taxed to the appellant.

AFFIRMED.