FRANK MEDELMAN AND LEO SOKOL, APPELLANTS, V. STANTON-PILGER DRAINAGE DISTRICT, APPELLEE.

52 N. W. 2d 328

Filed March 14, 1952. No. 33122.

*Deutsch & Jewell,* for appellants.

*T. L. Grady,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a condemnation proceeding instituted in the county court of Stanton County on June 8, 1950, by the

Stanton-Pilger Drainage District to obtain a 200-foot right-of-way across the lands of Frank Medelman and Leo Sokol, doing business as the Elkhorn Construction Company, for the purpose of constructing a new pilot channel to straighten the course of the Elkhorn River. Appeal was taken from the appraiser's award to the district court for Stanton County. In the district court trial was had to a jury. The sole issue tried by the jury was to determine the amount of damages which the landowners had sustained by the taking. The jury returned a verdict for $500 on which the trial court entered judgment. Their motion for new trial having been overruled, the landowners appealed.

Appellants owned approximately 97 acres of land in the south half of Section 3, Township 23 North, Range 3 East of the 6th P. M., in Stanton County, Nebraska, at the time this proceeding was instituted. They acquired this land by warranty deed dated November 8, 1947, and paid for it the sum of $5,000. The appellee's right-of-way passes across the north part of the land.

In this type of action we have held: ."As damages the plaintiffs are entitled to recover full compensation for the land actually taken and for such damages to the remainder thereof as are equivalent to the diminution of the fair market value thereof." Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

In this respect we have said: "The market value of property includes its value for any reasonable use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which made up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating compensation. The proper inquiry is, what is its fair market value in view of any reasonable use to which it may be applied and all the reasonable uses to which it is adapted? The correct rule is as stated in Alloway

v. Nashville, 88 Tenn. 510, 13 S. W. 123: ' "* * * witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market?" Lewis, Eminent Domain, sec. 479.' " Langdon v. Loup River Public Power Dist., *supra.*

As stated in 18 Am. Jur., Eminent Domain, § 242, p. 878: "When the land taken has valuable deposits of minerals, or contains sand, gravel, peat, or other materials of value, or is covered with growing crops, or trees capable of being converted into lumber, these circumstances may be considered so far as they affect the market value of the land; but part of the realty cannot be separately valued for its materials, as an item additional to the value of the land for the purpose of sale." See 29 C. J. S., Eminent Domain, § 174, p. 1043.

Under this principle appellants could introduce evidence to show that the lands involved contained gravel deposits of such character that they were adaptable to commercial development and show the fair market value of the lands in view thereof. This they did.

Appellants complain that the trial court erred by permitting appellee's witnesses to testify as to the fair market value of the lands actually taken for a new pilot channel and the damage resulting therefrom to the remainder because they did not show a knowledge of all the uses and purposes to which the property could be put.

Appellee's witnesses were qualified to and did testify as to the value of the land taken and damages resulting

therefrom based on its use for pasture and agricultural purposes but none were qualified as experts in the field of gravel and the commercial production thereof nor did they testify concerning its value if reasonably adaptable thereto, although they did testify as to observing what had been taken from some of the test holes and also what had been stockpiled in 1948.

"Minerals in place are matters concerning which the ordinary person probably knows little as to their value, and their value is usually a matter for expert testimony to explain to the jury, because not capable of being understood by the average person." Thorn v. Dunn, (Tex. Civ. App.), 94 S. W. 2d 1229.

Whether or not this rule would apply to gravel, which is here involved, we need not decide.

We said in Langdon v. Loup River Public Power Dist., supra: "The question of the qualification of witnesses to testify as to the value of the premises in question is raised by the rulings on objections to the testimony of certain witnesses. In Republican V. R. Co. v. Arnold, 13 Neb. 485, 14 N. W. 478, we stated: 'Where persons are shown to be familiar with the value of a particular piece of land, across which a railroad has been built, they may be permitted to testify as to the value of such tract immediately before the location of the road, and to the value thereof immediately afterwards.' And in Wahlgren v. Loup River Public Power District, supra, we stated: '* * * where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation. Republican V. R. Co. v. Arnold, 13 Neb. 485, 14 N. W. 478; Blakeley v. Chicago, K. & N. R. Co., 25 Neb. 207, 40 N. W. 956; Burlington & M. R. R. Co. v. White, 28 Neb. 166, 44 N. W. 95; Chicago, R. I. & P. Ry. Co. v. Buel, 56 Neb. 205, 76 N. W. 571.' And as stated in 20 Am. Jur. 754, sec. 897: 'Ordinarily, property owners who have lived for some time in the vi-

cinity and know the property are qualified to testify to its value.' Either lay or expert witnesses may be used if proper foundation is laid showing they have an acquaintance with the property and are informed as to the state of the market, the weight and credibility being for the jury."

Appellants introduced evidence to the effect that the lands taken contained a gravel bed adaptable to being developed for the profitable production of commercial gravel and the witness considered that fact in placing his value thereon. On the other hand appellee introduced evidence as to the value of the lands based on its use for pasture and agricultural purposes only. It is not necessary that a witness, testifying as to the fair market value of lands, be familiar with, have knowledge of, and take into consideration every possible use to which the owner of the lands being taken may think they are adaptable. What a witness considers in coming to his conclusion as to the value thereof can be brought out in cross-examination. However, the owner may show all of the reasonable uses to which he thinks the lands are adaptable and what the lands are worth in view thereof. If, as a result thereof, there is conflict in whether the lands are adaptable for a certain use it is then up to the jury to determine which of the two views they believe.

That was the situation here. There is much evidence in the record to show that it was not practical to develop these lands for the production of commercial gravel, such as the unprofitable operations of appellants in 1948 when they lost considerable money in trying to do so, the observations made by witnesses of appellee as to the material taken from the test holes and what was in the stockpile, and the removal by appellants in 1949, before this action was started, of most of the equipment which they had placed there in 1948.

Nor is the fact that appellee did not call a witness expert in the field of gravel and its production here con-

trolling. As quoted in Langdon v. Loup River Public Power Dist., *supra*: "As stated in Horst v. Lewis, 71 Neb. 370, 103 N. W. 460: 'Expert evidence is permitted where the facts under investigation are such that the witness is supposed, from his experience, skill and study, to have peculiar knowledge upon the subject of inquiry, which jurors generally do not possess.' However, '* * * the weight to be given to such expert testimony is ordinarily a question for the jury. * * * Jurors are not bound by the testimony of experts; their evidence is to be weighed as that of all other witnesses.' McNaught v. New York Life Ins. Co., 143 Neb. 220, 12 N. W. 2d 108."

"An authoritative text states the rule as follows: 'Expert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are generally regarded as purely advisory in character; the jury may place whatever weight they choose upon such testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable. * * * Opinion testimony as to value is not conclusive; when uncontradicted, it may be regarded as sufficient proof, but even in such case the jury may exercise their independent judgment.' 20 Am. Jur., Evidence, § 1208, p. 1060." Trask v. Klein, 150 Neb. 316, 34 N. W. 2d 396.

And as stated in Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603:

"In this respect it is appellants' thought that the evidence of their two experts was conclusive on this factual issue as a matter of law. While it was a subject to which expert testimony was relevant it is not a subject which lends itself exclusively to that type of testimony. Lay witnesses could testify to what they observed and from all the testimony it was for the jury to determine the ultimate question.

"Under ordinary circumstances expert opinion evidence is to be considered and weighed by the triers of fact like any other testimony. See 32 C. J. S., Evidence,

§ 569, p. 390; Morse v. Chicago, B. & Q. Ry. Co., 81 Neb. 745, 116 N. W. 859."

Appellants call attention to the fact that appellee failed to call a party by the name of O'Brien who made a test hole on the premises shortly before the trial in the district court. In regard thereto they refer to the following principle: "The unexplained failure of a party to call or examine an available witness who possesses peculiar knowledge may give rise to an inference that the testimony of such witness would not sustain the contention of the party." 31 C. J. S., Evidence, § 156, p. 853.

The failure to call this party, what the party had done in regard to assisting in making a test hole, his qualifications, and all other matters relating thereto were fully presented to the jury.

The extent of a party's right to invoke his opponent's failure to call an available witness is to impair the value of the opponent's proof and to give greater credence to his evidence on any issue on which it is shown that the witness might have had knowledge. However, the probative force of any inference arising therefrom is for the triers of the facts, which in this case was the jury.

Appellants contend the court erred in excluding the evidence of Frank Medelman as to what he would have done as to putting in a full gravel outfit on this land if the drainage district had not gone through it.

"Owner's intended use. In some jurisdictions evidence of what the owner intended to do with the land may be considered as one of the facts in estimating the compensation due him, but it is generally held that the owner is not entitled to enhanced damages because he is prevented from carrying out a particular scheme of improvement." 29 C. J. S., Eminent Domain, § 160, p. 1028.

We think the offered testimony had no relation to the issue before the jury, which was the reasonable

uses to which the land was adaptable. It is also speculative.

Appellants finally contend the verdict of the jury is grossly inadequate and contrary to and not sustained by the evidence. It is true the jury did not exactly follow the evidence of either appellee's or appellants' witnesses in fixing the amount of the recovery. But there is evidence in the record on which they could base their verdict, including their view of the premises.

As early as Northeastern Nebraska R. R. Co. v. Frazier, 25 Neb. 42, 40 N. W. 604, this court made the observation that: "The principal question ordinarily is the amount of damages sustained. This question is to be determined from the testimony of experts, that is, persons familiar with the value of the land, and this may include farmers and others. The observation of this court, from the cases which have been before us, is, that juries ordinarily do not adopt the highest or lowest estimates of witnesses, but seem to have endeavored to bring in just verdicts. Nor did the jury in this case adopt the highest estimates of the witnesses."

Therein the court went on to hold: "The question of the amount of damages sustained by a land owner for a right of way condemned across his land is peculiarly of a local nature, proper to be determined by a jury of the county, and the supreme court ordinarily will not vacate or modify the verdict, if it is based upon the testimony in the case." This holding has often been approved by this court. See, Langdon v. Loup River Public Power Dist., *supra;* Kennedy v. Department of Roads and Irrigation, 150 Neb. 727, 35 N. W. 2d 781.

"It is the province of the jury to harmonize the testimony in so far as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses. Wahlgren v. Loup River Public Power District, 139 Neb. 489, 297 N. W. 833." Langdon v. Loup River Public Power Dist., *supra.*

" '* * * when the evidence is conflicting the verdict

of the jury will not be set aside, unless it is shown to be clearly wrong.' Grimm v. Elkhorn Valley Drainage District, 98 Neb. 260, 152 N. W. 374." Langdon v. Loup River Public Power Dist., *supra*.

While in conflict, there is competent evidence in the record to sustain the jury's verdict and we cannot say that it is clearly wrong.

In view of the foregoing, we affirm the judgment of the district court.

AFFIRMED.