Della M. Dodder, appellant, v. Ætna Life Insurance
Company, appellee.

Filed December 15, 1919.    No. 20626.

1. **Appeal: Affirmance.** Where the probative force of the evidence
   is so strong that the jury would not be justified in rendering any
   other verdict, this court will not disturb the same.

2. ———: ———. Where the verdict announced by the jury was
   the only one permissible under the law and evidence, the judgment
   will be affirmed, and in such case errors occurring at the trial were
   not prejudicial.

3. **Insurance: .Burden of Proof.** In suit on an accident insurance
   policy, the burden of proof is upon the plaintiff to show that death
   was accidental.

4. **Evidence: Death by Suicide: Presumption.** "The presumption
   against death by suicide is *prima facie* only and rebuttable. It
   prevails when the cause of death is unknown. It does not pre-
   vail as a presumption in the presence of facts bearing upon the
   question whether death is intentional or accidental." *Grosvenor
   v. Fidelity & Casualty Co.*, 102 Neb. 629.

Appeal from the district court for Douglas county:
William A. Redick, Judge.    *Affirmed.*

*A. S. Churchill* and *Byron G. Burbank,* for appellant.

*Gurley & Fitch, contra.*

Aldrich, J.

Plaintiff sues defendant insurance company to recover
on one certain accident insurance policy in the sum of
$15,000, growing out of the death of Edward L. Dodder,
which took place about six or seven miles northwest of
Florence in Douglas county, on the evening of January
4, 1917.

The record discloses that death was caused by a gunshot
wound. It appears the bullet entered Dodder's head at
the right temple and came out slightly above and back
of the left ear. Mr. Dodder was found sitting behind
the steering wheel of his Cadillac coupé with the lights

out, brake set, his head dropped slightly to the right, his hat on the seat beside him.

The car was a three-passenger, left-hand drive coupé with the usual glass inclosures. From the condition of the car it appears there was no shot from the outside, and no mark from the inside of any penetration by a bullet or other missile. Glass and woodwork were intact. The steering wheel had a mechanism which enabled the driver to adjust the same to his size and to get in and out of the car through either door. Blood had flowed from the bullet wound in the head down on the seat of the car and from there to the floor, and thence trickled through the car, staining the snow underneath. Cigar ashes were upon the front of the clothing of the deceased.

Dodder's position in the car was one of quiet undisturbed repose; there was no evidence of any struggle, as appeared from his position and the condition of his clothes. Lying on the floor of the car, which was covered with blood, was a partially smoked cigar. Dodder's feet were on the floor opposite the brake. Back of the clutch, lying at his feet, was a six-shot 38-caliber Colt's revolver, loaded with long cartridges, one of which was exploded. Dodder owned a Colt's revolver similar to the one found in his automobile. The revolver owned by Dodder does not appear to have been found, but if this one found in his car was not his, it certainly answered its description. Later a long-38 caliber lead bullet with blood upon it was found imbedded in the dirt near where the car had stood.

The scene of this tragedy was staged midst the hills on a sparsely traveled by-road about 200 yards off the main road running north and south from Florence. The ground was covered with snow which had lain there several days. The only wheel tracks near the automobile were those of a farm wagon, and the wagon of the rural mail carrier, who was first to discover Mr. Dodder sitting in his car, dead. The mail carrier drove to a near-by

·house and found three neighbors, to whom he reported what he had seen. These three men, together with himself, went to the car, looked it over, noted the surrounding ground, looked through the car windows, saw the pool of blood, and the bullet wound. The only evidence of any one having been in the vicinity of the car was the track of a man about 50 yards therefrom going across the road from the northeast in a southwesterly direction. These tracks apparently had been made in the snow three or four days before the shooting. This observation of the surrounding conditions was first noted by the rural mail carrier on January 5, 1917, about 1 o'clock p. m. These same surrounding facts were witnessed by the three men who accompanied the mail carrier and corroborated him.

The further fact appears undisputed in the record that he was treasurer of the fraternal society known as the Ancient Order of United Workmen; that as such treasurer he was short in his accounts in the sum of $16,000 at the time of his death; that he sustained illicit relations with a woman other than his wife; that at or near the date of his death this same woman received a letter from him containing $150 in $50 bills.

This statement of facts constitutes an undisputed situation in this case.

The issue of fact which demonstrates beyond cavil the truth concerning the cause of Dodder's death unerringly points to the proposition that he came to his death by a shot fired from a 38-caliber Colt's revolver held in his own hand. The facts narrated by four disinterested witnesses who first saw Mr. Dodder, viewed his body, and examined the car and ground in that vicinity, unanswerably sustain the conclusion that Dodder's death was caused by suicide.

The burden of proof was upon the plaintiff to show that the death was accidental. Proof of this would show that the death was not suicidal, as said in *Grosvenor v. Fidelity & Casualty Co.*, 102 Neb. 629, where this court

announced the rule in a similar case: "The burden is upon the plaintiff to show that the death was accidental; or, in other words, that it was not suicidal."

The facts concerning the death of deceased assured are so plain that death was not the result of accident, that the conclusion which the trial judge arrived at was correct as a matter of law.

As to evidence of powder marks, there is some conflict, but it preponderates in favor of the defense. The particles of powder imbedded in the wound, the skin surrounding the wound, the burns on the skin, indicate the gun at the time of its explosion was close to his temple. This is another instance of fact proving or tending to prove that the deceased assured came to his death by his own hand.

The errors complained of by plaintiff must be considered harmless, because the jury brought in the only verdict it could render when based on reliable and pertinent facts and competent evidence and the law as given by the court.

This court has in substance held, where the verdict announced by the jury was the only one permissible under the law and evidence, the judgment will be affirmed, and in such case errors occurring at the trial could not have been prejudicial. *Vernon v. Union Life Ins. Co.* 58 Neb. 494; *Jeffres v. Cashman,* 42 Neb. 594; *Mann v. Welton,* 21 Neb. 541. Also this court has specifically said in *Ramold v. Clayton,* 77 Neb. 178: "When the verdict returned by the jury is the only one justified by the evidence, errors in the giving and refusing of instructions are not prejudicial."

There is no material or competent evidence that points out a fact from which one could deduce the presumption that death might have resulted from accident or violence.

Under the plain provisions of the accident policy sued upon, plaintiff cannot recover for loss from death by suicide.

No reversible errors appearing in the record, and having rendered the only verdict permissible under the evidence, the judgment is

AFFIRMED.

SEDGWICK, J., not sitting.