SUSIE SAWYER, APPELLANT, V. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, APPELLEE.

FILED JULY 10, 1931. No. 27830.

*Raymond & Fitzgerald,* for appellant.

*Cleary, Horan & Skutt* and *Wright & Wright, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ.

GOOD, J.

This is an action on an accident policy of insurance, to recover the amount of the certificate for the death of insured, alleged to have been caused by accidental means. Defendant admitted death of insured, but denied that it was caused by accidental means. At the close of the evidence in behalf of plaintiff, the court sustained a motion to direct a verdict for defendant. Plaintiff has appealed.

While there are several errors assigned, the only one that we need to consider is whether there was sufficient evidence to require the submission of the cause to the jury.

The record discloses the following facts: Insured was 43 years of age, married and living happily with his wife, with no domestic trouble, occupying a responsible and remunerative position, without business troubles or worries, and in fairly good health. Some time previous to his death, he had learned from a physician that he had a high blood pressure, at least higher than is usual for one of his age. Insured and his wife lived in a small town, and

he desired to consult his family physician, living in a town some 20 miles distant. On Sunday morning, the 26th of January, 1930, he and his wife had arranged to drive in insured's automobile to their former home, to consult the family physician with reference to his blood pressure.

It is shown that a year or two previous, while on a vacation trip in a new car and having considerable money with them, it was thought desirable to purchase a gun for their protection. Defendant purchased a pistol and placed it in the pocket on the right-hand side of the car. Whether the pocket was in the front door of the car, or under the cowl in front of the door, is not made clear. So far as disclosed, the pistol was always kept in the car. Insured was never known to have had it in the home or to have discharged it prior to his death.

On the morning in question, after breakfast, he went to the garage to pump up three of the tires which were flat. His wife remonstrated with him about doing this work alone, and asked him to wait until her son-in-law, who lived only half a block distant, should come over and assist him. However, insured went to work alone and pumped or partially pumped up one of the tires, returned to the house, and visited for a few moments with a friend who had called. After the friend's departure, the wife being about to take a bundle of clothing to her daughter's house, insured offered to carry it for her, but the wife said it was light and she could carry it. They went out together, past the garage; the husband entered the garage and the wife went on to her daughter's. In 10 minutes she came back and found insured dead on the floor of his garage, his body on the left-hand side of the car, his feet on the running board, near its junction with the front fender, and the body lying nearly, but not quite, parallel with the car. There was a bullet hole through his head. The bullet had entered back of the right ear and had emerged slightly to the front and above the left ear. The pistol was lying by his side, a few inches from his right

hand. There is no evidence that there were any powder burns about the wound. The flesh where the bullet entered was seared. The record is barren as to whether the left car door was open, or whether the glass in the car window was up or down, or whether any tools were in the pocket where the pistol was always kept, or in the car, or on the floor. The record does not disclose the caliber, make, or character of the gun. It was stated, however, on oral argument, that it was an automatic pistol. Shortly after the removal of the body, the car was pushed out of the garage and a shell, which would fit the pistol and which had been recently discharged, was found on the garage floor, either in front of or under the front part of the car. As stated, the trial court, on this showing of facts, directed a verdict for the defendant, on the theory that the proof was insufficient to establish death by accidental means.

Plaintiff relies upon the fact that death was caused by external, violent means, and on the presumption which obtains that one does not voluntarily take his own life, especially in the absence of any incentive or motive for so doing. It must be borne in mind that this action is based on an accident policy, where it is incumbent upon plaintiff to prove that death was caused by some accidental means. That it was caused by a bullet wound is clear, and, aided by the presumption that one does not voluntarily take his own life, a *prima facie* case has been made, unless the circumstances disclosed are such as to overcome the presumption.

In *Grosvenor v. Fidelity & Casualty Co.*, 102 Neb. 629, it was held: "The presumption against death by suicide is *prima facie* only and rebuttable. It prevails when the cause of death is unknown. It does not prevail as a presumption in the presence of facts bearing upon the question whether death is intentional or accidental.

"When evidence is adduced which is contrary to such presumption, or the presumption is met by conflicting pre-

sumptions, it disappears, although the fact upon which it rests may still remain, proper to be considered in arriving at a conclusion.

"The petition averred death from 'accidental carbolic acid or toxic poisoning.' This the answer denied and averred 'suicide by the intentional drinking of deadly poison, namely, by the drinking of carbolic acid.' The reply contained a denial and admission of death from 'drinkng a deadly poison, to wit, carbolic acid.' *Held*, that the burden was upon plaintiff to produce evidence showing that the death was accidental and not suicidal.

"The burden of proving a cause of action or defense is not sustained by evidence from which the jury can arrive at its conclusion only by mere guess or conjecture."

We are aware that some courts have held that the presumption against death by suicide amounts to evidence. It is a presumption which obtains because of the general rule that people desire the continuance of life and do not, ordinarily, take their own lives, at least without some motive or incentive. It must also be borne in mind that there are many suicides where the incentive or motive is wholly unknown, and what prompted such an act may be known only to the person doing it. The presumption may be overcome either by direct or circumstantial evidence. The question here is whether the circumstances produced on behalf of plaintiff are such as to overcome or remove the presumption.

At the oral argument it was suggested that insured might have been reaching from the left to the right side of the car for a tool to be used, and had taken hold of the gun, and that it might have accidentally exploded, but this is mere conjecture, and we think is refuted by the facts proved. If such had been the fact, no doubt the pistol would have dropped in the car and the exploded shell would have been found in and not outside the car. There was a space of but two or three feet between the left-hand side of the car and the wall of the garage. The bullet,

therefore, must have been fired at rather close range. It is probable that, had it been held any considerable distance from the head when discharged, there would have been no powder burns to the wound. The absence of such powder burns would indicate that the pistol was held either at a considerable distance from insured's head, or so close as to prevent any powder burns. As heretofore noted, the small space between the wall of the garage and the car would indicate that the pistol could not have been fired from any considerable distance. Therefore, in order to have no powder burns, it is probable that the gun was held against the insured's head. The fact that the wound where the bullet entered was seared indicates the presence of considerable heat. It seems improbable that the bullet, which would have entered the head in a small fraction of a second after it was discharged, could have been so hot as to sear the flesh. The inference is that the flesh was seared because of the heat generated by the explosion of the powder, and that the pistol was held practically against insured's head. The location of the wound, the facts detailed, and the further fact that no other person than insured was present, all indicate that he probably held the pistol against his head when it was discharged. Under such circumstances, accidental discharge of the pistol is not a reasonable deduction.

The facts and circumstances proved, we think, overcome the presumption that one does not voluntarily take his own life. In this view of the case, a verdict was properly directed for defendant. The judgment is

AFFIRMED.