ELLA PEABODY, APPELLANT, V. CONTINENTAL LIFE INSURANCE COMPANY, APPELLEE.

FILED NOVEMBER 27, 1934. No. 29019.

*Charles E. Foster, Frank C. Yates* and *Francis M. Casey,* for appellant.

*Montgomery, Hall & Young, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is an action on an accident insurance policy by the beneficiary therein designated. Case, the insured, met his death on a Maryland highway in a collision with a moving motor car. The defense relied on is that Case committed suicide by throwing himself in front of a rapidly-moving automobile, thereby intentionally causing his death. At the conclusion of all the evidence, the trial court, on defendant's motion, dismissed the action. Plaintiff has appealed.

The policy provided that it did not cover loss in case of death by suicide, whether insured was sane or insane.

The decision of this cause hinges upon the question of whether there was sufficient evidence to warrant the submission of the cause to the jury. The record reflects the following pertinent facts:

Case was an ex-service man. Some time in May, 1932, he left his home in Omaha, and, with a large number of other ex-service men, engaged in a march to Washington, D. C., to demand immediate payment of the soldiers' bonus. The next heard from him was a letter he wrote and mailed in St. Louis to his sister in Omaha in which he asked that a remittance of a

small sum of money be sent to him in Washington, stating that he expected to be there in about four days. The next heard from him was at a police substation between Cumberland and Frostburg in Maryland. He entered this station at about 5:30 in the afternoon and asked for something to eat. A meal was furnished him. The police officers testified that while in the station Case was nervous, restless and complained several times about the noise caused by the honking of automobiles, and that he asked why the police did not stop such noise; that he seemed to be disgusted because he had become separated from his "buddies" and was undecided whether he would go on to Washington or return to his home in Nebraska. One of the officers testified that his talk was incoherent and hard to understand and that he seemed to be deranged. The police sergeant testified that he took out a pocketbook and handed it to him, stating, in substance, that if he should be killed on the highway the officer would hear of it and return the pocketbook to his mother. The sergeant returned it to Case, who threw it on the desk. The sergeant insisted on Case taking the pocketbook, which he apparently did. Mr. Case also threw his overcoat on a chair or desk and said he would not need that now, but apparently he picked it up and started westward towards Frostburg.

The highway on which Case was walking was a well traveled public highway consisting of 16 feet of macadam in the center, adjacent to which on each side was a concrete shoulder 3 feet wide, and outside of the concrete a dirt shoulder of like width. When about a mile from the police station, Case was walking on the left-hand side of the highway on the concrete shoulder. One Harvey was driving an automobile from the opposite direction on the same side of the highway. In the car with Mr. Harvey were a Miss Thomas, who later became his wife, Mr. and Mrs. Croyle and their three children. Harvey and Mrs. Harvey, Mr. and Mrs. Croyle and their two older children testified respecting the accident. Their

testimony was to the effect that as Case and the car were approaching each other Case stepped either to the extreme edge of the concrete shoulder or possibly onto the dirt shoulder, and when the car was only a few feet from him he threw his overcoat on the ground and threw himself or dived in front of the moving automobile. Harvey swerved his car to the left, but could not avoid striking Case, who was severely injured and died that same evening. It also appears that Harvey's car was traveling on the right-hand side of the macadam portion of the highway; that, had Case and the driver of the car each pursued his course, there would have been no collision. Several of the witnesses who were in the car designated Case's act as diving in front of the car as though he were diving in water. Mr. Harvey thought that Case's head was struck by the right front hub of the car. Other witnesses testified that he threw himself in front of the car and that the car ran over him. The evidence shows that Mr. Harvey was driving at the rate of 30 to 35 miles an hour. It was daylight and the visibility was good.

There was evidence on behalf of plaintiff that Case was of a cheerful, sunny disposition; that prior to his starting on the march to Washington he had contemplated moving to Oklahoma and engaging in chicken raising; that he had been gassed in the service of his country; that he sometimes had dizzy spells due to heart attacks and sometimes fainted or collapsed from heart attacks. Plaintiff also attempted to show that automobiles traveling over the macadam highway would sometimes throw gravel or small stones onto the concrete shoulder, and that persons stepping thereon might slip or lose their balance. Plaintiff argues that because of heart attacks, resulting in dizzy spells, to which Case was subject, he might have fallen into the path of the moving car, or that he might have stepped onto a small stone and lost his balance, thereby causing him to fall in front of the car. It may be observed, however, that there is nothing

in the record to show that Case stepped upon gravel or stones and thereby lost his balance, or that there were any stones or gravel on the concrete shoulder at that place. The record fails to show that Case was afflicted with dizziness or a heart attack at the time. In fact, the evidence of the eyewitnesses negatives any such contention.

Plaintiff argues that, since no motive is shown for Case to commit suicide and it is fairly proved or admitted that he died from an external violent cause, the presumption obtains that his death resulted from accident and was not suicide.

Suicide is the intentional taking of one's own life. *Sampson v. Ladies of the Maccabees of the World*, 89 Neb. 641. It may be conceded that love of life raises a presumption, in the absence of evidence to the contrary, that one does not intentionally take his own life, but this presumption is rebuttable and must yield to proof of physical facts clearly inconsistent with it. *Hardinger v. Modern Brotherhood of America*, 72 Neb. 869.

Lack of motive is a circumstance to be considered in determining whether a person committed suicide or died from an accidental cause, but proof of motive is not essential to sustain a finding of suicide, where the evidence clearly points to suicidal death. *Stempel v. Oregon Life Ins. Co.*, 157 Wash. 678.

Plaintiff's argument, that Case may have stepped on gravel or a small stone which caused him to lose his balance and fall in front of the moving car, finds no support in the evidence and rests on conjecture or mere speculation. A verdict cannot rest on mere conjecture or speculation. "Presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference." *Lebs v. Mutual Benefit Health & Accident Ass'n*, 124 Neb. 491.

In the instant case the competent evidence of eyewitnesses clearly shows that Mr. Case intentionally

threw himself in front of the rapidly-moving automobile. His conversations and acts while at the police station a very short time before tend to show that he was contemplating an early death on the highway. He would not have wanted to leave his pocketbook with the officer, to be sent to his mother, unless he had anticipated death within a reasonably short distance from where the police station was located. Presumably, he had carried the pocketbook with him from the time he left home until he had reached a point in the state of Maryland. That he would want to leave the pocketbook there, to be sent to his home in case of his death, would be rather strange. In view of his subsequent death in the manner in which it occurred, we think it plainly indicates that he was then contemplating suicide.

In our opinion, the competent evidence adduced in the case would admit of no other finding than that his death was caused by his intentional act. In no view of the case could a verdict for plaintiff have been sustained. We think the trial court properly withdrew the case from the jury and dismissed the action.

There are other assignments of error relating to the introduction and exclusion of evidence, but they are not argued in the briefs, and an examination of the record fails to disclose any prejudicial error.

AFFIRMED.