ANNA LEE HAITH, APPELLANT AND CROSS-APPELLEE, V. THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA, A
CORPORATION, APPELLEE AND CROSS-APPELLANT.

106 N. W. 2d 169

Filed November 25, 1960.   No. 34790.

*John R. Doyle,* for appellant.

*Mason, Knudsen, Dickeson & Berkheimer,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Anna Lee Haith, as the wife of David A. Haith, deceased, hereinafter called Haith, and as the beneficiary of a $3,000 life insurance policy issued to Haith on November 28, 1956, during his lifetime by defendant, The Prudential Insurance Company of America, brought this action against defendant seeking to recover $6,000 under the "Accidental Death Benefit Provision" of the policy. In that connection, plaintiff alleged that on or about April 15, 1958, while said policy was in full force and effect, Haith met his death through external, violent, and accidental means, namely by a gunshot wound. A copy of the policy was attached to and made a part of plaintiff's petition.

Defendant's answer admitted issuance of the policy involved as alleged; that plaintiff was beneficiary therein; that from the time the policy was issued to and including the time of Haith's death on April 15, 1958, all of the monthly premiums had been paid on said policy; and that plaintiff had filed a proof of loss, which claim defendant had refused to pay. Defendant then denied generally and alleged that a suicide clause of said policy provided that: "Suicide. — Death of the Insured from suicide within two years from the policy date, whether the Insured is sane or insane, shall limit the company's liability to the return of the amount of premiums paid." Defendant then alleged that the death of Haith was from suicide caused by a self-inflicted gunshot wound with the intention of taking his own life and bringing about self-destruction, which suicide occurred on April 15, 1958, within 2 years of November 28, 1956, the policy date; that total premiums paid on such policy amounted

to $132.77; and that no amount was due on the policy to plaintiff from defendant except such amount of premiums paid. Defendant then alleged that one of the accidental death benefit provisions of the policy stated that: "Exceptions: No Accidental Death Benefit shall be payable if injury or death results (1) from suicide or any attempt thereat, whether the Insured is sane or insane: * * *," and that since Haith's death was caused from suicide as theretofore alleged, there was no accidental death benefit due and owing plaintiff from defendant. Defendant also alleged that on August 27, 1958, and again on September 17, 1958, defendant tendered to plaintiff the sum of $132.77 for the total premiums paid.

Plaintiff's reply denied generally the new matter in defendant's answer, but admitted that the policy contained the "Suicide" clause and "Exceptions" as alleged by defendant; that the death of Haith resulted from a gunshot wound; and that defendant had tendered to plaintiff $132.77, the total sum of the premiums paid as alleged by defendant, which tenders were refused by plaintiff.

Upon trial to a jury, and at conclusion of the evidence, defendant moved for a directed verdict in favor of plaintiff for only the amount of the premiums paid because the evidence was insufficient to show an accidental death under the accidental death benefit provisions of the policy, and that the evidence showed that the only reasonable hypothesis was that of suicide. Such motion was overruled.

Thereafter, upon submission to a jury, it returned a verdict for plaintiff, and judgment was rendered accordingly. Thereafter, defendant filed a motion for judgment notwithstanding the verdict, in accord with its motion for a directed verdict, or in the alternative for a new trial. After a hearing thereon, the court set aside the verdict and judgment and granted a new trial without giving a reason for that decision and with-

out directly disposing of defendant's motion for judgment notwithstanding the verdict, which, however, in legal effect operated as a denial of defendant's motion for judgment notwithstanding the verdict. See, Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609; Armer v. Omaha & C. B. St. Ry. Co., 153 Neb. 352, 44 N. W. 2d 640; Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

Thereafter plaintiff appealed, assigning that the trial court erred in granting a new trial, and defendant cross-appealed assigning that the trial court erred in failing to sustain defendant's motion for directed verdict and in failing to grant defendant's motion for judgment notwithstanding the verdict. We sustain defendant's cross-appeal.

Plaintiff relies upon certain rules reaffirmed in Myers v. Platte Valley Public Power & Irr. Dist., 159 Neb. 493, 67 N. W. 2d 739, wherein we held that: "A new trial is to be granted for a legal cause and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons.

"The Supreme Court is not vested with authority by the Constitution or laws of the state to set aside the verdict of a jury, having for its support sufficient competent evidence, even though this court may be of the opinion that had it been the trier of the case, it would have reached a different conclusion.

"While the trial judge need not give his reason for reaching a decision, the justification of the decision must be one that can be established from the record.

"Where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured."

Plaintiff also relies upon Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, wherein the

trial court granted a new trial and we held that: "If the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions." However, herein defendant cross-appealed and thus had a right to point out the prejudicial error that defendant contends exists in the record and which defendant contends did not justify the decision of the trial court in granting a new trial when a judgment notwithstanding the verdict should have been rendered.

On the other hand, defendant relies upon Sawyer v. Mutual Benefit Health & Accident Assn., 121 Neb. 504, 237 N. W. 615, a case comparable in all material respects with that at bar. Therein this court cited and quoted with approval from Grosvenor v. Fidelity & Casualty Co., 102 Neb. 629, 168 N. W. 596. Such cases concluded, and it is the well-settled rule in this jurisdiction, that the presumption against death by suicide is prima facie only and rebuttable by defendant, and such presumption is overcome and disappears when either direct or circumstantial evidence is introduced by defendant showing that the death was caused by suicide, and the burden is then upon plaintiff to adduce evidence that the death was accidental and not from suicide. See, also, Dodder v. Aetna Life Ins. Co., 104 Neb. 70, 175 N. W. 651; Peabody v. Continental Life Ins. Co., 128 Neb. 23, 257 N. W. 482. Such cases are also authority for application of the rule that when the evidence, whether direct or circumstantial, shows that the only reasonable hypothesis would be that of suicide and the evidence is clearly inconsistent with any other explanation, the

trial court should, when the question is properly raised, take the case from the jury, treat the matter as a question of law, and direct a proper verdict; and that a verdict which is contrary to the evidence and thus clearly wrong should be vacated for the reason that it is not sustained by the evidence and is contrary to law.

As we view it, the sole material and decisive question presented is whether or not the trial court should have sustained defendant's motion for directed verdict and whether a judgment notwithstanding the verdict should have been rendered in conformity with the motion to direct a verdict instead of granting a new trial. In that connection, as held in Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238: "A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence."

We have heretofore summarized the pleadings and admissions made therein, which will not be again repeated at length. The substance thereof, together with evidence adduced by plaintiff in chief, was that plaintiff was the wife of Haith at the time of his death and the beneficiary named in the policy of insurance issued by defendant to Haith on November 28, 1956, a copy of which was attached to and made a part of plaintiff's petition and the original of which was offered by plaintiff and received in evidence. Its provisions applicable herein and the interpretation thereof are not questioned in any proper manner, and admittedly such policy was in force and effect on April 15, 1958, the date of Haith's death, when all monthly premiums in the total sum of $132.77 had been paid. Admittedly, Haith's death resulted from a gunshot wound, and he was identified as

dead on April 15, 1958, by a deputy sheriff and a Lincoln lieutenant of police, and again on April 17, 1958, by plaintiff at the mortuary. Also, Haith's death admittedly occurred within 2 years from the policy date. Plaintiff testified, and their official "Record of Marriage," received in evidence, discloses that she married Haith in Nebraska City on March 12, 1956, when she was 29 years old and he was 24 years old. He had been twice previously married and divorced, and she had been once previously married and divorced. Prior to April 14, 1958, they had lived together at Elmwood with two children, one of whom was 11 years old and one of whom was 2½ years old at the time of trial.

Haith was a sheet metal worker employed by Capital Steel Company since December 1957. He left their home at Elmwood about 6:30 a.m. on April 14, 1958, driving a 1953 Ford two-door car owned jointly by the parties. That was the last time he was seen alive by plaintiff. She testified that they seldom quarreled; that he had a happy disposition; that he was easy to live with; that he was a good father; and that he provided for plaintiff and the children. She testified that she never knew him to buy a gun but that once shortly after their marriage he had borrowed a rifle which was taken back when she asked him to do so, and that she never saw a rifle around the house again. She knew that he had been to a named doctor in Lincoln a couple of weeks before his death for treatment of an earache about which he had complained, but that he had theretofore made no other complaints except once when he got a piece of steel in his eye which steel had been properly removed. The named doctor was not called as a witness at the trial. Plaintiff testified that Haith was about 5 feet 6 inches tall; slight of build; weighed 130 to 140 pounds; and that he had short arms requiring him to wear shirts about size 14, with 30 inch sleeves. Plaintiff then rested.

Thereupon, uncontradicted evidence adduced by de-

fendant was as follows: The Lincoln police department usually called the sheriff of Lancaster County and his deputies in cases such as that at bar because they were acting county coroners. A deputy sheriff was called to investigate the death of Haith at about 2:27 a. m., April 15, 1958. Upon his arrival at 2051 Worthington, the residence of one June I. Lawson and her husband, the deputy sheriff found that a lieutenant and two other police officers of the Lincoln police department had already arrived. There Haith was found dead in the two-door Ford car parked in the Lawson driveway. He was sitting on the left front seat of the car behind the steering wheel with the ankle of his right leg on the driver's seat cushion up under his buttocks, and with his left foot at an angle on the floor of the driver's side. His head drooped down upon his chest. His left hand was in his lap. His right arm hung over the back of the left front seat and he was bleeding profusely from a bullet wound on his forehead about an inch above the bridge of his nose. His right index finger was in the trigger guard of a 22-caliber rifle. The butt of the rifle stock was resting on the back seat and the barrel was pointing toward the front of the car through the space between the two front jump seats. There was one or two empty coke bottles and a 7-Up bottle half full sitting upright on the little open door of the glove compartment. The bottles had the odor of alcoholic contents, and a three-fourths empty quart of whiskey and some full coke bottles were found elsewhere in the car.

The interior of the car and Haith's clothing were examined. His clothing was not in disarray and no evidence of a struggle was found on his body or in the car. The deputy sheriff took the rifle from the car into his custody and subsequently delivered it to the sheriff's office where it was kept in a gun case in that office until the trial, whereat the rifle was offered and received in evidence. At the trial the rifle was officially identified as a 22-caliber Marlin bolt-action repeater,

and when found it had a clip of seven 22-caliber shells in it and an empty shell case in the chamber of the barrel. There is ample competent evidence that the wound in the forehead of the deceased and that his death as well were caused by a 22-caliber bullet. Also, there were powder burns on his forehead and under the surface of the skin around the wound, caused by a discharge of the weapon while pressed against the skin.

Once or twice a week for several months previously, during his lifetime, deceased had been a customer of the Midway Tavern in Lincoln during the day or evening. There he would drink beer and play games with the waitresses when they were not busy. In doing so, he became acquainted with a Mrs. Meyers, a waitress named Mrs. Densberger, who was unmarried and lived with Mrs. Meyers at 412 South Twenty-fifth Street, and a waitress named Mrs. Lawson, who was married and lived at 2051 Worthington. During the evening of April 14, 1958, they had all planned to go out to Lavonne's Tavern located northeast of Lincoln on the Cornhusker Highway, where beer and foods were served and a band played for dancing. About 8 p. m., Haith drove his car and took Mrs. Densberger and Mrs. Lawson out to the Lawson home, where they all had a highball and Mrs. Lawson washed up and changed her clothes while Haith and Mrs. Densberger visited together. After about one-half hour, the three of them left as planned and went out to Lavonne's Tavern. Mrs. Meyers was there with others when they arrived. There they all drank beer, ate sandwiches, visited, and watched the dancing, but they did not dance. They stayed there until about midnight and upon leaving, Mrs. Lawson bought six bottles of coke and 7-Up to drink with whiskey. They then fixed one drink for each of them, spiked with Haith's whiskey, before leaving. They each had one such drink in Haith's car on the road home. Mrs. Lawson sat in the right front seat and Mrs. Densberger and Mrs. Meyers sat in the back seat of Haith's

car while he drove Mrs. Densberger and Mrs. Meyers to their home at 412 South Twenty-fifth Street where they arrived about 12:30 a. m. Haith then drove with Mrs. Lawson to 2051 Worthington where he parked his car on the driveway.

There he and Mrs. Lawson had one more spiked drink together, and, being without matches to light a cigarette, Haith suggested that she look in the glove compartment for them. She looked and found no matches therein but did find parts of a gun which Haith said belonged to his rifle. She also saw therein two boxes of 22-caliber shells, one of which contained 22 shorts and the other of which contained 22 longs. As they continued to visit, Haith said: " 'I haven't got much longer to live.' * * * 'The doctor said that I've got cancer .of the brain and I've only got six months to live.' " She then expressed her sympathy and suggested that he go to Mayo Brothers where they did wonderful things, but he said, " 'No, the doctor said I haven't got much longer to live, maybe six months.' * * * 'You know, I'm in love with you.' * * * 'I'm in love with you, and I can't have you,' * * * 'You're in love with your husband' " to which she replied " 'Yes.' " Because Haith had always said that he was divorced, she then said: " 'There's a lot of girls around town,' " whereupon he said, " 'I haven't got much time to live, only about six months.' * * * 'I haven't got nothing to live for, and you haven't either.' " Haith then reached back in the car, pulled the rifle up, stuck the barrel between her eyes, clicked the gun, and said: " '* * * I'm going to kill you and then I'm going to kill myself,' " whereupon he started to push the gun down in her face so she grabbed it, pushed it up, and he pulled it around again, saying, " 'If you don't want me to kill you, I'll kill myself,' * * *." Thereupon she shoved the gun up against the roof top and said, " 'Don't be silly, you don't want to do that. If you want to kill yourself, go ahead, and I don't have to stay here and watch,'

* * *." She then became afraid, took out her house key, pushed down on the door handle, jumped out of the car, and ran into the house. There she turned off the living room light so no light could be seen in the house and so that she could pull back the window blinds and look out to see if Haith had left. There she heard no shot but she kept watch and never saw anyone else around the car but she could see that Haith's car still remained in the driveway. After waiting and watching until about 2 a. m. and Haith had not left, she called Mrs. Densberger by telephone, explained the situation, and asked her to come out at once. Mrs. Densberger then came to 2051 Worthington in a taxicab and entered the house. Upon being told what had happened, she went out alone to Haith's car and with the aid of a flashlight she saw blood upon him and thought something was wrong, so upon her return to the house, Mrs. Lawson called the police, repeated Haith's threats, and asked them to send someone out to her home. When the police came, she told them what had happened, and upon returning from observation of the car and the situation therein, the police called the deputy sheriff heretofore mentioned, who then came out to Lawson's home. About 4 a. m. Mrs. Lawson's husband was called at Columbus where he was then working, and he came to their home. The rifle was later identified as one belonging to Haith's brother.

Defendant's evidence heretofore set forth appeared in the testimony of the deputy sheriff, the police lieutenant, Mrs. Densberger, and a material portion of a deposition of Mrs. Lawson received in evidence after it had been shown by a deputy sheriff that Mrs. Lawson had moved to Wichita, Kansas; that she was out of the county of the place of trial or hearing; and that defendant had been unable to procure the attendance of the witness, Mrs. Lawson, by subpoena. Also, there was no showing that her absence was procured by defendant who offered the deposition. See subsections 3(b) and

3(d) of § 25-1267.04, R. R. S. 1943. True, upon offering such deposition testimony, defendant called attention to the wrong alphabetical subsections of section 25-1267.04, R. R. S. 1943, but the foundation for admission of the deposition testimony was complete and proper, in compliance with subsections 3(b) and 3(d) heretofore mentioned.

In rebuttal plaintiff called only Mrs. Densberger as a witness. The substance of her testimony was that she sat in the back seat of Haith's car while riding from the Lavonne Tavern to her home at 412 South Twenty-fifth Street; that during such period she did not knowingly sit on any gun or notice one on the floor of the car because she was not looking for any rifle or weapon and had no reason to do so; that she did not examine the ledge up by the rear window of the car or see a gun up there when she got in Haith's car; and that she then saw the cokes and 7-Up which they had obtained at Lavonne's but that she didn't notice anything else although there could have been something in the car, because she wasn't looking for anything. She testified that she saw a rifle in the car resembling the one received in evidence when she looked in Haith's car after she had arrived at the Lawson home in a taxicab.

As we view it, the evidence adduced in plaintiff's behalf amounted to no more than to create a presumption which was overcome by the undisputed facts and circumstances adduced by defendant which were so conclusive and inconsistent with any other hypothesis or explanation except suicide that the trial court should have directed a verdict as requested by defendant. Therefore, we conclude that the order of the trial court granting a new trial should be and hereby is reversed and the cause is remanded with directions that the trial court sustain defendant's motion for judgment notwithstanding the verdict, as requested by defendant, and accordingly render a judgment in favor of plaintiff and

against defendant for $132.77 with interest at the legal rate from April 15, 1958, to August 27, 1958, with costs taxed to plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.