560

State of Nebraska, Department of Roads, appellant,
v. Eva I. Dillon, a widow, appellee.

119 N. W. 2d 87

Filed December 21, 1962. No. 35263.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Asa A. Christensen, for appellant.

Orville Entenman, for appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Spencer, Boslaugh, and Brower, JJ.

Simmons, C. J.

This is a case in eminent domain wherein the State appropriated land for the building of an interstate highway.

Pursuant to section 76-717, R. S. Supp., 1961, the owner of the land will be hereinafter referred to as the plaintiff.

Defendant appeals claiming that the verdict of the jury was manifestly excessive and clearly wrong and that the trial court erred in permitting a witness for the plaintiff to add as a separate item of damages the value of recreational advantages, particularly hunting.

The jury awarded the plaintiff $33,025 for land taken and land damaged. Both items of damage are included in the one sum. No way appears by which it can be determined the amount allowed by the jury for each item that is included in the total.

We reverse the judgment of the trial court and remand the cause for further proceedings.

Items herein referred to omit fractional parts of land or value beyond the usual decimal point.

The exact amount of the ownership of plaintiff in acres cannot be accurately determined. It was, however, in the neighborhood of 540 acres. The land bordered on the Platte River on the south and west near Gretna, Nebraska. There is some question in the evidence about plaintiff's title to some of the land; however, it is not in land taken.

The defendant appropriated a strip of land 300 feet wide, running north and south through plaintiff's land, or a total of 43 acres. Thirty acres of this were of good quality bottom farm land and 13 acres were described as "timber land."

Before the taking by defendant, there were about 53 acres of timber land in one tract with access on the land side on a privilege basis of a neighbor and not as a matter of right. After the taking, a small area was still accessible on a permission basis through the neighbor's land. The remainder not taken had no access available from the land side. Reference is made to the cutting of posts on this land; yet, no one testified to the quantity, quality, or value of posts so taken. Reference is also made to its use for pasture and shelter of cattle in the wintertime. Yet, here again, no one undertook to fix the quantity, quality, or value of the pasture either in the land taken or that not taken.

There was some testimony as to the hunting rights and their value. Obviously, some of the hunting rights on this land at the bend of the river were taken, but we find no evidence that fixed that value. Yet, some of plaintiff's witnesses testified to a value of as much as $200 an acre for the timber land taken and depreciated the land not taken as much as 75%.

There remained about 25 acres of good farm land west of the highway. This was accessible by going

north from the remainder of the farm, a distance of a mile or more, then across the highway and south to the land. Its inaccessibility was only in the matter of distance.

There remained east of the highway over 100 acres of good bottom land suitable for corn farming.

The farm buildings were east of the highway.

This opinion then will deal with the value of the land taken, the farm land remaining, and the timber land remaining.

Plaintiff used the testimony of five witnesses as to value of the land taken and the damage to that remaining. Defendant used two. Two of plaintiff's witnesses fixed the total of the two items at less than the jury's verdict. One of plaintiff's witnesses was plaintiff's son and tenant. He fixed the two values at considerably more than the jury's verdict. His qualifications as an expert on value are quite questionable. Yet, his testimony is not questioned in this regard. Another of plaintiff's witnesses arrived at a value of land taken and land damaged and added to his total the loss of hunting rights as a value separate and apart from the land. It is his testimony in that regard that is questioned here. We do not deem it necessary to determine that assignment.

There were several acres of plaintiff's hill pasture land damaged. Dirt for grading was taken from some of this land and without question it was depreciated in value. Yet, here again, the jury was left to speculate as to any sound basis for the determination of the value of the pasture land for pasture purposes before and after taking.

There were, according to some witnesses, about 160 acres of good bottom corn land. Thirty acres were taken. The balance was left in two tracts. There were about 25 acres west of the highway and the balance to the east. Witnesses fixed the value of this land before the taking as high as $400 an acre. They then depreciated

the value of the remaining land, sometimes on a percentage per acre basis. It is obvious that in the minds of the witnesses, the greatest damage occurred to this good farm land. It is undisputed that it produced as much corn per acre after the highway was built as it did before, but the value of that production is not shown. It does appear that before the taking that the larger area of this good land was farmed with corn, rows running east and west. After its separation into two tracts, the rows were run north and south, and an increased number of "point rows" was caused. Plaintiff's tenant operated "four row" power machinery. These point rows caused an inconvenience. There is no showing more than that as to the damage caused by the taking.

The good land west of the highway also was farmed north and south with the resulting inconvenience in corn rows as on the east tract. Stress is placed on the fact that although this land was separated physically by the highway for a distance of 300 feet, to go from one piece to the other involved traveling some 2 or 3 miles with farm machinery. The number of trips of this kind taken during the year does not appear. There is testimony that the corn was worked three times during the summer and that corn picking was a once-over job, presumably done with power machinery.

There is no testimony that the land was prepared for planting. Assuming that that was done, the total movement of farm machinery from the east to the west land was five times, but even that does not appear, for the tenant's home place was on other land about equal distance from the two tracts. No witness testified to the added cost or value of this operation as a basis for depreciation of the value of the land.

The tenant testified that there were no storage facilities for corn raised west of the highway and that instead of hauling it for storage in facilities east of the highway, he sold that corn on the open market. Here again, there is no testimony that there was either a loss

from the sale or a necessity for the sale, that would be reflected in the value of the land. Yet, as to this good corn land, witness after witness testified without foundation of facts upon which to base it, that "I depreciated" the entire acreage in varying amounts because of the taking of the 30-acre strip of farm land.

There is another tract of about 100 acres recently cleared of timber and devoted to small grain because of stumps and roots that make the use of farm machinery for corn raising difficult, if not impossible. The productivity of this land is not shown. It is not touched by the highway nor its availability for farm and productivity in any way decreased because of the defendant's taking. Yet again, witnesses testified to that "I depreciated" the value of that land also.

There is no question here but that plaintiff suffered substantial damage for lands taken and some damage to lands not taken. There is also no question that witnesses testified to a total damage greater than that which the jury allowed. Other witnesses testified to appreciably less than that the jury allowed. But when the evidence is all reviewed, the result is a verdict for an amount that is clearly excessive and clearly wrong.

Courts have no right to order one man to pay money to another without some basis in fact and in law. The same rule applies to money being taken from the State.

We see no essential difference in this case and that of Moyer v. Nebraska E. G. & T. Coop., 171 Neb. 879, 108 N. W. 2d 89. We held: "When evidence is conflicting, the verdict of a jury, or the finding of fact by a court in a law action for damages where a jury is waived, will be set aside where manifestly excessive and clearly wrong."

"The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." Armbruster v. Stanton-

Pilger Drainage Dist., 169 Neb. 594, 100 N. W. 2d 781. The trial court instructed the jury in accord with the above rule.

The difficulty is that much of the evidence here, received without objection, did not permit the determination of damages under the above rule.

We reverse the judgment of the trial court and remand the cause of action for further proceedings consistent with this opinion.

REVERSED AND REMANDED.