STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT,
v. EVA I. DILLON, A WIDOW, APPELLEE.

122 N. W. 2d 223

Filed June 21, 1963.   No. 35263.

174 Neb. 560, 119 N. W. 2d 87, for original opinion. See

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Asa A. Christensen, for appellant.

Orville Entenman, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This is an interstate highway condemnation action initiated by the State of Nebraska, Department of Roads, against the condemnee owner, Eva I. Dillon, wherein the State appropriated a portion of the condemnee's land running diagonally across her 540-acre farm. Our original opinion herein, reversing the judgment and remanding the cause for retrial in the district court on the grounds of excessiveness of the verdict, is found in 174 Neb. 560, 119 N. W. 2d 87. On motion for rehearing, we granted reargument, and the case is now before the court for further decision.

We set aside the original opinion and affirm the judgment of the trial court.

We briefly review the history of the litigation. In the county court of Sarpy County, Nebraska, after the State's original petition was filed, the county court, agreeable to the statute, appointed three disinterested freeholders of that county as appraisers. They were

Alois Gramlich, Lester Hauschild, and Mike Hogan. They returned an award of $30,765.25. On appeal by appropriate allegations in the pleadings, the State sought a reduction in the award and the condemnee, hereinafter referred to as the plaintiff, prayed for an award in the sum of $47,200 alleging substantially that the award of the appraisers was insufficient. The case was tried to a jury in the district court. It returned a verdict in the sum of $33,025 upon which judgment was entered. Motion for new trial was overruled and the State of Nebraska, Department of Roads, appealed, assigning as error the excessiveness of the verdict.

The sole question discussed in our previous opinion in this matter, and the sole matter before us at this time, is an evaluation of the weight and credibility of the testimony to determine whether the amount of the verdict and the judgment of the trial court were purely and excessively wrong under applicable rules of law.

This case was tried to a jury which was permitted, by stipulation of the parties, to view the premises prior to the acceptance of oral evidence. The witnesses for the plaintiff consisted of the owner herself, her son, who is a tenant on the farm and has either lived on or been familiar with it for many years, and four witnesses including the three Sarpy County appraisers who entered the original appraisal award in county court. The State's witnesses consisted of two appraisal experts who are employed by the State and who frequently testify for the State in condemnation and highway cases. The residence of one is in Missouri, and the other is in Wayne, Nebraska. Almost all of the testimony in the case was admitted without objection. No objections were made of any nature to the court's instructions to the jury. No objections were made or error claimed with respect to the competency or qualifications of any of the witnesses or jurors.

The grounds for reversal on appeal are that the verdict of the jury and the judgment were clearly against

the weight and reasonableness of the evidence and there-fore must be set aside and a new trial granted. Twenty Club v. State, 167 Neb. 37, 91 N. W. 2d 64; Leffelman v. City of Hartington, 173 Neb. 259, 113 N. W. 2d 107.

With this review of the litigation in mind, we review the evidence. The Dillon farm is located in the extreme southwest corner of Sarpy County and bordered on the west and south by the Platte River. The farm consists of approximately 540 acres of land and some additional acres in the river itself, the exact amount of which was not shown during the trial. The interstate highway, a controlled access highway, runs generally north and south through the Dillon farm. The strip condemned by the State, consisting of 43.13 acres of land that were actually taken, runs from the river bank north through the entire length of the bottom land on the Dillon farm and bisects four 80-acre tracts of land. The evidence shows that this was not an ordinary farm. The land consisted of four principal types, timber hill pasture, timber bottom pasture, good bottom land of high pro-ductivity, and bottom land recently cleared and not yet capable of growing corn although capable of raising small grains. The farm also had almost 2 miles of river front with facilities for hunting, fishing, and recreation. It was a part of a drainage district, and the evidence shows that none of the land east of the drain-age ditch, which is on the west side of the property, has ever been flooded since the year 1944. These different types of property were adjacent to each other and in-tegrated into a total farm unit extending from the river bank to the top of the bluffs to the north, a distance of over 2 miles. The farm was not broken by any public road prior to the taking by the State. The most produc-tive portion of this farm unit was approximately 160 acres of choice bottom land on the western edge of the farm. Diagonally through this portion of the farm, the interstate non-access highway runs. The actual taking for this purpose is 43.13 acres. The evidence shows that

the non-access feature will create a situation where the farm in its present state will abut only property on the north and the east. The interstate runs diagonally through the Dillon farm, creating a separation from the principal portion of the farm, and leaving to the west of the non-access interstate highway a portion of from 35 to 41 acres of land. Of this segregated portion of the original farm, 25 to 31 acres were good bottom land, and 10 to 12 acres were timber land. The evidence further shows that it segregated an additional 27 or 28 acres of timber land from the main portion of the farm unless the owner of the farm constructed a bridge over a drainage ditch. The evidence also shows that the Dillon farm is located within 20 miles of the South Omaha stockyards, and it is a fair inference from the evidence that it is ideal for cattle feeding with proper proportions of fertile productive bottom soil, hill pasture, river timber, and pasture. The evidence shows that it has been devoted to this adaptable use. The evidence also shows, since the interstate highway creates an inaccessible wall on the west side of this property, it will be impossible to get from one segregated parcel of the farm to the other except by way of an overpass located to the north of the Dillon farm which is over 1 mile north of the north line of the Dillon farm and considerably more from the southern or southeastern sections of the farm. The nearest interchange for entering or leaving the interstate is 4 miles north of the owner's land.

As foundation testimony for valuation, there is considerable evidence as to the value of the present and prospective available uses of the timber land for recreational purposes, including hunting rights. This timber land borders on the Platte River. Without objection, considerable testimony was received as to the value of this land as a part of the farm, as a recreational area, and for hunting rights. Its proximity to a large metropolitan area was noted in the evidence. Testimony was received that tracts of this timber land bordering on the

river had been rented for recreational and hunting purposes for substantial sums. We deem it significant here that all of the witnesses, including those of the State, assigned a high percentage of decrease in remainder value to the segregated portions of the timber land, both on the west and east sides of the interstate. One of the State's witnesses fixed a 66% decrease in value on the eastern segregated portion of the timber land of approximately 28 acres. The estimates of the plaintiff's witnesses varied from 75 to 87½%. The principal difference as relates to the end figure of damage in this respect comes from the original value assigned to the property and not to the percentage of decrease. The original values placed on this property vary from $145 per acre set by the witnesses for the State to the minimum of $175 set by the testimony of the witnesses for the plaintiff. The State also condemned three small strips of land for channel purposes, and took two temporary easements for borrow pit purposes covering 14 acres of land and two temporary easements for haul road purposes cutting across portions of the land using approximately 1½ acres. On other available uses, there is also testimony that sand and gravel rights could be sold from the land. There was evidence that options for such use had been sold by the plaintiff in the past.

We go now to the testimony as to valuation. As our original opinion in this matter noted, the evidence as to the value of the tract of land actually taken does not create much of a problem. There is less than a $2,000 difference between the maximum estimate by the State's witnesses and the minimum estimate of the plaintiff's witnesses. Independent of the plaintiff and the plaintiff's son, whose testimony reached a much higher valuation of $47,200, we now summarize the testimony of the witnesses as to valuation by reducing testimony of the independent witnesses and the witnesses for the State in the following chart form:

## Valuations Placed by Plaintiff's Witnesses

| | Gramlich | Hogan | Warren | Hauschild |
|---|---|---|---|---|
| Total Value Farm | $ 113,490 | $ 129,800 | $ 119,840 | $ 125,500 |
| Average Value Per Acre | $ 206 -10 | $ 240 | $ 230 | $ 230 |
| Value Part Taken, 43A | $ 11,492 | $ 11,600 | $ 12,775 | $ 11,600 |
| Total Value Rem. Before | $ 101,998 | $ 118,200 | $ 107,065 | $ 113,900 |
| Total Value Rem. After | $ 83,003 | $ 97,125 | $ 80,036 | $ 94,850 |
| Total Value Rem. Damages | $ 18,994 | $ 21,075 | $ 26,678 | $ 19,050 |

Rem. Damages Itemized

Bottom Crop:

| | Gramlich | Hogan | Warren | Hauschild |
|---|---|---|---|---|
| Acres East of Hiway | 110 @ $ 35 | 100 @ $ 50 | 114 @ $ 70 | 79 @ $ 70 |
| Acres West of Hiway | 25 @ $150 | 25 @ $200 | 25 @ $262 | 25 @ $150 |
| By Reason of Borrow | $ 1,110.50 | | $ 1,837.50 | $ 1,500.00 |
| Cleared Land Damage | | | 160 @ $ 35 . | |

Timber Land

| | Gramlich | Hogan | Warren | Hauschild |
|---|---|---|---|---|
| Acres North of Hiway | 7 @ $100 | 35 @ $125 | 35 @ $131 | 5 @ $100 |
| Acres South of Hiway | 30 @ $175 | | | 30 @ $150 |
| Hunting Rights Damage | $ 4,000 | | $3,750 (in add. land) | |

The two witnesses for the State testified as to these items as follows:

| | Ewing | Davis |
|---|---|---|
| Total Value Farm | $111,000 | $116,800 |
| Value Part Taken, 43A | $ 8,075 | $ 9,600 |
| Total Value Rem. Before | $102,925 | $107,200 |
| Total Value Rem. After | $ 92,700 | $101,200 |
| Total Value Rem. Damages | $ 10,225 | $ 6,000 |
| Rem. Damages Itemized | | |
| Bottom Crop: | | |
| Acres East of Hiway | | No Dam. |
| Acres West of Hiway | | 30 @ $50 |
| Timber Land | | |
| Acres North of Hiway | | 10 @ $45 |
| Acres South of Hiway | | 29 @ $95 |
| Hunting Rights Damage | | Considered |

It is obvious from an inspection of the above chart that material differences in the final opinion as to the damages to market value arose, not only because of differences in opinion as to the effect on market value of the taking as it related to the remainder, but that there were material differences as to opinion as to the original value of the remainder. We observe that there is only a $1,200 difference in valuation between the four plaintiff's witnesses as to the total value of the 43.13

acres actually taken. There is approximately a $1,600 difference in opinion as to the State's witnesses on this point. We observe that in fixing the total value of the remainder damages, there was a $2,100 difference, or less, in the opinions of Gramlich, Hogan, and Hauschild. We observe further the difficulty in determining remainder damage on the part of the State's witnesses because there was a $2,225 discrepancy in their opinions as to remainder valuation. From the chart that we have included in this opinion and the chart marked as "Chart B" in the State's reply brief, the highest valuation of the State's witnesses as to remainder, $10,225, included no specific allowance for the remainder damage as to many material items that were considered important by all of the other witnesses including the State's witness, Davis.

We also observe that in the opinion as to original valuation of the total value of the farm that one of the State's witnesses, Davis, testified to a valuation of over $3,000 beyond the testimony of Gramlich, a witness for the plaintiff and one of the appraisers in county court. On the other hand, Ewing, who testified for the State, placed an original valuation of $111,000 on the whole farm while Hogan placed a total valuation for the plaintiff of $129,800. One of the State's witnesses testified to approximately 80% more remainder damage than the other State witness. Comparative discrepancies are observable in many other areas from an inspection of the chart summarizations in this opinion. We make these observations only for the purpose of demonstrating the difficulty of and the peculiar function of the jury in a case of this type to evaluate the weight and credibility of the testimony. The jurors came from the local community. Prior to the taking of the testimony, they visited and saw the premises in question. Their integrity or qualifications are not questioned or challenged in any nature whatsoever. The State does not suggest that the verdict was the result of passion or prejudice

in any respect. The range of damage which was testified to by the witnesses for the plaintiff, plaintiff and son excluded, was from approximately $30,000 to $39,000. The three lowest of the plaintiff's witnesses testified as to a range varying from about $30,000 to $32,775.

Confronted with this situation, we feel that we should adhere to the rules recently announced in Connor v. State, *ante* p. 140, 120 N. W. 2d 916. In that case, although the type of land condemned was different in nature, the range of valuation was from $23,650 to $97,264.71. The amount of the verdict sustained by the court was $68,149.62. As in the present case, the instructions, competency, and foundation for the witnesses' testimony were not questioned. As here, there was no error in the trial that could be asserted as properly related to error in the amount of the verdict. In the Connor case, *supra,* we said: "In Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168, it was pointed out that in a condemnation action the weight and credibility of testimony of either lay or expert witnesses regarding value of land taken or value of remainder immediately before and immediately after taking is for the jury. * * * In Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328, it was said: 'Under ordinary circumstances expert opinion evidence is to be considered and weighed by the triers of fact like any other testimony.'"

In the Connor case, *supra,* we affirmed our holding giving significance to the peculiarly local nature of damages sustained in a condemnation action when we said: "As to the attitude to be taken by this court on review of the verdict of a jury in a condemnation action, it was said in Kennedy v. Department of Roads & Irrigation, 150 Neb. 727, 35 N. W. 2d 781: 'The amount of damages sustained by a landowner for a right-of-way condemned across his land is peculiarly of a local nature to be determined by a jury and this court will not ordinarily interfere with the verdict if it is based upon

the testimony. * * * When the evidence is conflicting, the verdict of the jury will not be set aside unless it is clearly wrong.' "

Significant here also is the following statement from Phillips Petroleum Co. v. City of Omaha, 171 Neb. 457, 106 N. W. 2d 727, quoting Churchill v. Beethe, 48 Neb. 87, 66 N. W. 992, 35 L. R. A. 442, wherein it is stated: " 'It is now the settled law of the state that for all injuries which may arise on account of the proper construction or future operation of an improvement, an adjoining proprietor must be compensated in the original condemnation proceedings.' "

In this case, as in the Connor case, *supra*, much of the attack now presented by the State in its brief is directed towards the incompetency of much of the evidence presented. As we have pointed out, there is very little merit to this argument as an original matter, but in any event, this contention cannot be considered. In disposing of this same contention in the Connor case, *supra*, our court said as follows: " 'Where testimony is offered and admitted in evidence without objection being made thereto, error cannot be predicated thereon on appeal. The rule applies to the district court when reviewing its own proceedings on motion for a new trial.' See, also, Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578; Fuss v. Williamson, 159 Neb. 525, 68 N. W. 2d 139; Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916; Borsen v. Moskowitz, 163 Neb. 223, 79 N. W. 2d 178; Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571; Hilligas v. Farr, 171 Neb. 105, 105 N. W. 2d 578; Law v. Gilmore, 171 Neb. 112, 105 N. W. 2d 595; Haith v. Prudential Ins. Co., 171 Neb. 281, 106 N. W. 2d 169; Barker v. Wardens & Vestrymen of St. Barnabas Church, 171 Neb. 574, 106 N. W. 2d 858."

The qualifications and competency of all of the witnesses, including the experts, are not challenged and must be regarded as sufficient and nothing appears the effect of which is to challenge their credibility. We

observe the complete absence of testimony of any local witnesses on behalf of the State. The evidence as to valuation is conflicting, as usual, in this type of case and the jury's verdict here reflected a consideration of the fact that damages of this type are peculiarly local in nature, and the valuation it fixed is clearly within the reconcilable range of testimony of the local witnesses.

Our original opinion in this matter was devoted almost entirely to the evidence relating to the decrease of the farm productivity of the remainder of the property. By definition, remainder land not actually taken by the condemner is not usually physically affected with respect to its soil productivity. The test is market value and not diminution in the productivity of the land except insofar as it bears upon what effect it would have upon what a willing purchaser would pay and a willing seller would sell. In the early history of the development of the law of eminent domain, value damage to remainder land was not compensated. This rule has long since been changed. The true test is the effect of the severance on market value at the time of the taking. This, in turn, is based upon all of the inconveniences caused by the severance as they might affect a prospective purchaser and the effect of the severance upon every available, reasonable, and probable future use of the property, as they relate to the market value of the remainder of the property considered as a unitary whole. The items of inconvenience as to the present use of the remainder may not be added together by a landowner and be recovered separately as damages. Conversely, the condemner may not separate them out and individually itemize them for the same purpose. They are significant only for the formulation of a basis of an opinion as to the market value of the total unit of the property as before and after the taking. Without objection, either in the trial court or here by the State, the trial judge properly instructed the jury in part as follows: "In fixing the damages sustained by

the landowner in consequence of the appropriation or injury of such owner's property for a public use there may be taken into account every nonspeculative element of inconvenience, annoyance and disadvantage resulting from the improvement, which would influence an intending purchaser's estimate of the market value of such property, including damages, if any, *resulting from the physical severance of the land into separate tracts and the manner of access thereto and from interference with recreational facilities, not by adding them together item by item or allowing them as such but such elements should be considered in determining the extent that, taken as a whole, they detract from the market value of the remaining property.*" (Emphasis supplied.)

We have reviewed the evidence. The value of the land actually taken is not in material dispute. We have reviewed the actual, available, and prospective uses of this land both separately and as a whole, and the actual presently proved inconveniences and decreases in productivity for which the land is now being used. We note the diagonal splitting of the basic part of the farm structure, including the non-access feature of the interstate. We have reviewed the opinion differences as to both original valuation and valuation of the remainder. We have noted the relationship of all of these factors as to its effect on the future development of this unit of land as to available and prospective uses. Mere lack of proof of a change in the productivity of the remainder for the use to which it is now devoted could not lead us to a conclusion that the findings of the board of appraisers, the jury, and the trial judge were clearly wrong.

The trial of this case appears to have been conducted without error. It was based on conflicting, competent, and material testimony received almost without objection. The plaintiff landowner has only one day in court and all damages must be recovered within the limited perspective of the valuations fixed at the time

of the taking. It appears that the rights of the parties were carefully safeguarded by the trial judge in this case.

This court does not have the function or power to substitute its own judgment as to the merits of a case based upon competent and conflicting evidence in the place of the verdict of the jury and the judgment of the trial court. The verdict and the judgment should be and are hereby affirmed.

AFFIRMED.